[L. A. No. 72. Department Two.—March 11, 1896.]

## NATIONAL CARRIAGE MANUFACTURING COMPANY, APPELLANT, v. STORY AND ISHAM COMMERCIAL COMPANY ET AL., RESPONDENTS.

111 531
f127 78
111 531
139 289
e139 294

CORPORATIONS—INSOLVENCY—UNPAID SUBSCRIPTION TO STOCK—TRANSFER OF STOCK TO AVOID LIABILITY TO CREDITORS.—A stockholder in an insolvent corporation cannot avoid his liability for an unpaid subscription upon stock held by him, by assigning it without consideration to an insolvent person; and a judgment creditor of the corporation who has had execution issued against the corporation and returned *nulla bona* may attack the *bona fides* of such assignment, and enforce the subscription against the original holder of the stock to the extent of his judgment.

ID.—JUDGMENT FOR CONVERSION OF STOCK BY CORPORATION—ESTOPPEL—LIABILITY OF STOCKHOLDERS.—A judgment in favor of the assignee of such stock against the corporation for damages for conversion of the stock, on account of the refusal of the corporation to transfer the stock to the assignee upon its books, is not an estoppel, which can prevent a judgment creditor of the corporation from assailing the *bona fides* of the assignment; nor can the corporation after its insolvency, by converting the stock, relieve the stockholder of liability thereupon to its creditors, whatever may be the motive which induced the act of conversion.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. GEORGE PUTERBAUGH, Judge.

The facts are stated in the opinion of the court.

*Haines & Ward,* and *Works & Works,* for Appellant.

Mrs. Story could not avoid liability by transferring the stock to an insolvent, without consideration, for the purpose of avoiding liability. (Civ. Code, secs. 327, 3439; *People* v. *Robinson,* 64 Cal. 373; *Sawyer* v. *Hoag,* 17 Wall. 610, 620, 623; *Sanger* v. *Upton,* 91 U. S. 56; 1 Morawetz on Corporations, sec. 166; *Everhart* v. *West Chester etc. R. R. Co.,* 28 Pa. St. 339; 2 Morawetz on Corporations, sec. 858; Thompson's Liability of Stockholders, secs. 211, 215; 1 Cook on Stock and Stockholders, secs. 263–65; *Bowden* v. *Johnson,* 107 U. S. 251; *Bowden* v. *Santos,* 1 Hughes, 158; *National Bank* v. *Case,* 99 U. S. 628; *Nathan* v. *Whitlock,* 3 Edw. Ch.

215; 9 Paige, 152; *McClaren* v. *Franciscus,* 43 Mo. 452, 467; *Miller* v. *Great Rep. Ins. Co.,* 50 Mo. 55; *Provident Sav. Inst.* v. *Jackson etc. Skating Rink,* 52 Mo. 557; *Davis* v. *Stevens,* 17 Blatchf. 259; *Rider* v. *Fritchey,* 49 Ohio St. 285; 23 Am. & Eng. Ency. of Law, 882, 883, and note; *Richmond* v. *Irons,* 121 U. S. 27; *Borland* v. *Haven,* 37 Fed. Rep. 394; *Hawley* v. *Upton,* 102 U. S. 314; *Hawkins* v. *Glenn,* 131 U. S. 319, 332, 334; *Morgan County* v. *Thomas,* 76 Ill. 120, 140; *County of Morgan* v. *Allen,* 103 U. S. 498, 508; *Handley* v. *Stutz,* 139 U. S. 417; *Johnson* v. *Laflin,* 5 Dill. 65, 76.) The judgment of conversion did not bind the creditors. (*Lovejoy* v. *Murray,* 3 Wall. 1, 10, 16; *Stirling* v. *Garritee,* 18 Md. 468, 474; *Elliott* v. *Hayden,* 104 Mass. 180; *United Society of Shakers* v. *Underwood,* 11 Bush, 265; 21 Am. Rep. 214; *Bell* v. *Perry,* 43 Iowa, 368; *Brady* v. *Whitney,* 24 Mich. 154; *Pryor* v. *Portsmouth Cattle Co.* (N. Mex.), 27 Pac. Rep. 327; Benjamin on Sales, sec. 49, p. 54; Freeman on Judgments, sec. 237; *Spivey* v. *Morris,* 18 Ala. 254; 52 Am. Dec. 224.)

*McDonald & McDonald,* for Respondent.

Plaintiff is estopped by the judgment in favor of Williams. (Code Civ. Proc., sec. 1908; *Brown* v. *Campbell,* 100 Cal. 644; 38 Am. St. Rep. 314.) The transfer by Mrs. Story to Williams of her stock was effectual, although not recorded on the books of the corporation. (Civ. Code, sec. 3442; Cook on Stock and Stockholders, 3d ed., sec. 258, and cases cited in p. 345, note 3, p. 348, note 1; *Whitney* v. *Butler,* 118 U. S. 655; *Hayes* v. *Shoemaker,* 39 Fed. Rep. 319; *Bull* v. *Bray,* 89 Cal. 286; *Threlkel* v. *Scott,* 89 Cal. 351; *Windhaus* v. *Bootz,* 92 Cal. 617; *Knox* v. *Moses,* 104 Cal. 505; *Brown* v. *Campbell, supra; Hospes* v. *Northwestern Mfg. Co.,* 48 Minn. 174; 31 Am. St. Rep. 637; *Dobinson* v. *McDonald,* 92 Cal. 33–6; *San Gabriel Wine Co.* v. *Behlow,* 94 Cal. 110; *Reay* v. *Butler,* 95 Cal. 214, 215; *Heinlen* v. *Heilbron,* 97 Cal. 103; *Meyer* **v.** *Great Western Ins. Co.,* 104 Cal. 381–86.)

Temple, J.—This is an action brought to recover from respondent, Adella B. Story, the unpaid subscription upon stock held by her in the corporation defendant, or so much of such subscription as is necessary to pay the judgment of plaintiff against said corporation.

Respondent became the owner of two thousand four hundred and ninety-eight shares of such stock on the sixteenth day of January, 1888, by transfer from H. L. Story. The shares were of the par value of one hundred dollars, and only ten dollars per share had been paid thereon.

The complaint shows that plaintiff recovered a judgment against the corporation defendant on the twenty-eighth day of February, 1894, for fourteen hundred and sixty-four dollars and fifty-two cents, and it is averred that respondent continued to be the owner of said stock, and that there was due on the same the sum of two hundred and twenty-four thousand eight hundred and twenty dollars. Plaintiff asks that respondent be compelled to pay into court upon her subscription a sum sufficient to pay its judgment and costs.

Respondent in her answer denied most of the material allegations of the complaint, and particularly that since the twenty-sixth day of February, 1891, she had owned or held any of the stock of the corporate defendant.

For a second defense she avers an assignment of her stock on the date last named to one Walter E. Williams, and that said Williams presented the certificate and the transfer to the officers of the defendant corporation and demanded a transfer thereof to him on the books of said corporation. That the corporation refused to allow such transfer to be made, but retained the certificate of stock and refused to return the same to said Williams, thus converting the same to its own use. And that on the twenty-eighth day of February, 1891, said Williams commenced an action against said corporation for the recovery of the value of said stock, and such proceedings were thereafter had that on the twenty-sixth day of May, 1891, said Williams recovered a judgment against said

corporation for the sum of twelve thousand two hundred and ten dollars, as the value of said stock, which judgment has never been appealed from, or set aside or modified.

For a third defense she denies that at the time plaintiff commenced its said action against said corporation, on which it recovered the above-mentioned judgment, the corporation was indebted to plaintiff in any sum whatever. She then avers that "during all the time aforesaid this defendant was the only solvent stockholder of said Story & Isham Commercial Company." Further, that the corporation was wholly insolvent, which fact was well known to plaintiff. And that the board of directors of the defendant corporation, for the purpose of injuring and defrauding defendant, knowingly and willfully permitted plaintiff to take and recover said judgment.

At the trial it was stipulated that plaintiff had recovered the judgment as averred, and that execution had been issued and returned *nulla bona* before this suit was commenced; also that respondent had, as alleged in her answer, assigned her stock to Williams, and that Williams had presented the certificate and demanded a transfer as alleged, and had recovered the judgment for conversion against the corporation as charged in her answer; plaintiff in said stipulation reserved the right to attack the *bona fides* of the assignment.

Williams, the supposed assignee of Mrs. Story, testified at the trial. He stated that Mr. Bates, who it is admitted was the agent of appellant, called upon him and wanted to know if he would accept the gift of the stock. He stated that the corporation was indebted in the amount of ninety thousand dollars, and that Mrs. Story had agreed to pay something like sixty thousand dollars; and, in order to stop any increase of liability, "she wanted to dispose of that stock to someone who was not in a condition that would render them liable for—not liable, but whose financial standing was such that there would be no element of strength or credit to

the concern. And at that time I was insolvent. I had just taken out insolvency proceedings, and the fact that I was insolvent made it so that my being a stockholder would prevent the company from getting any further credit and she would be out of it; and me being friendly to her, I accepted the gift of the stock in that way."

Under instructions, and at the request of Mrs. Story's attorneys, he took the stock to the office of the company and demanded a transfer on the books. He then went to her attorneys and notified them of what he had done. He had nothing to do with the bringing of the suit in his name for the conversion of the stock. He did not employ attorneys or pay costs. He had no hand in it except to testify. After the judgment had been recovered he assigned it to Mrs. Story. He had no agreement or conversation about the assignment. They presented the paper and he signed it without reading it just because he was asked to. There was no agreement that he should hold the stock for Mrs. Story. He did not think he could be compelled to assign the judgment to her. He then testified as follows:

"Q. In this whole transaction did you understand that you were acting in your own interest in the matter, or that you were acting purely as a matter of friendship for Mrs. Story? A. I was acting as a matter of friendship for Mrs. Story.

"Q. You took the assignment of this stock because Mr. Bates requested you to accommodate her? A. Yes, sir.

"Q. And held it in the same way? A. Yes, sir.

"Q. And when somebody came to ask you to transfer the judgment to her you transferred it in the same way? A. Yes, sir.

"Q. Purely as an act of friendship throughout? A. Yes, sir.

"Q. Now, when you speak about understanding you were the absolute owner of the stock, you simply mean you understood you were the legal owner of it? A. Yes, sir.

"Q. But that morally you felt like you should account to Mrs. Story for anything, if anything grew out of it? A. Yes, sir.

"Q. And you held it with that understanding? A. In my own mind. There was no agreement to that effect. I was at liberty to have done with it just what I pleased."

At the trial it was admitted, at the request of Mrs. Story's attorneys, that certain witnesses would testify, and were considered as having testified, that before the gift of the stock to Williams Mrs. Story had assumed and agreed to pay all the debts of the corporation, and the company had executed to her an instrument which she construed as conveying to her all the assets of the corporation, but that difference had arisen between herself and the officers of the corporation, and she believed that they would use every means in their power to injure her financially, and that to secure immunity as a stockholder from any indebtedness that might be created by the company in litigation with her, or otherwise, she desired to make such transfer of the stock to Williams, and that after the transfer to Williams she paid on the indebtedness of the corporation between ninety and one hundred and fifteen thousand dollars.

It will be seen, therefore, that both the assignor and assignee knew at the time of the transfer of the stock by Mrs. Story that the corporation was utterly insolvent, and that all its assets had been assigned to Mrs. Story herself, in consideration of her agreement to pay its debts. Further, it expressly appears that Mrs. Story understood that she was not transferring any property, but was merely getting rid of a liability, and she so represented to Williams at the time, and Williams accepted it as a favor to Mrs. Story, not for the purpose of acquiring any property himself, and in the whole matter was actuated not with the motive of gain, but out of pure friendship to Mrs. Story. Accordingly, he acted in the matter all through under the advice of her attorneys. She caused suit to be commenced in his name

against the corporation for conversion, without consulting him, and when judgment had been obtained she presented to him an assignment thereof to herself without first consulting him about it, and he executed it without reading, just because she wished it.

It was also said by the witness that there was no understanding that he should hold for Mrs. Story, or would reconvey to her. But what was there to hold? All the assets had been assigned to Mrs. Story, and both knew that they were insufficient to pay the debts. The corporation could not have been a "going concern," and since all its property rights had passed from it there was no possibility of a surplus or of possible value in the stock. In transferring the stock Mrs. Story transferred nothing, and did not think she passed anything of value to Williams. It was as though the payor of a promissory note could assign his liability to pay.

Still this apparent anomaly, this right to transfer a liability from one point of view, usually attaches to the interest of shareholders in a corporation. It has been said to be a special partnership in which the shareholders conduct business and own property in a fictitious name, and in which there is no *delectus personæ*, and, therefore, in which the partners may sell, and by so doing be relieved from all liability save such as the statute or the charter may provide shall continue. And this includes the liability for unpaid subscription for stock. So long as the corporation is solvent there is ordinarily no restriction upon the right to transfer, but the American doctrine is, that after the corporation has become insolvent and the stockholder knows this, and especially if the corporation has ceased to do business, a shareholder cannot transfer his stock to an insolvent or to an irresponsible person, so as to relieve himself from liability. And I do not find from the cases that it is necessary to find, in addition to the above facts, that there was an actual intent to defraud. Such a transaction would necessarily have that effect, and the stockholder having had the chance of gain cannot, when the

enterprise has proven unprofitable, escape the liability. It would be a fraud upon his fellow shareholders as well as upon the creditors, for it would deprive them of the right to enforce contribution. Upon this point the decisions and the text-writers in this country are as one.

Morawetz, in his work on Private Corporations, section 858, states the law as above, and cites numerous authorities. This author also states that the transfer must be a sale for a valuable consideration—what the English cases call an out-and-out sale.

Cook, in his work on Stock and Stockholders, sections 263–65, says: "In the United States a transfer of shares in a failing concern, made by a transferrer with the intention and for the purpose of escaping liability as a stockholder to a person who, for any cause, is incapable of responding in respect to such liability, is void, both as to creditors of the company and as to other shareholders; and that, too, although, as between the transferrer and transferee, the transaction may have been absolute and no secret trust involved." This author states, however, that it would be otherwise if the transferrer did not know of the insolvency of the corporation and the transfer was *bona fide.* In such case the transferrer would be released, although the corporation proved to be insolvent. This author also cites many cases. (See, also, Beach on Private Corporations, sec. 127; Spelling on Private Corporations, sec. 817; Thompson on Liability of Stockholders, sec. 210, et seq.) The last author states the substance of the cases in this country and in England at considerable length. This author concludes that the American rule results from the trust fund doctrine, and says courts of equity will not allow this portion of the fund to be frittered away by transfer to an insolvent for the purpose of escaping liability. He says, also, the intent, which is material, is the intent to escape liability. In this case that intent is avowed as the motive of the transfer by both the parties to it. Defendant claims, however, that there was no intent to escape the payment of liabilities then ex-

isting; yet she is endeavoring thereby to escape such liability. If the judgment was procured against the corporation by plaintiff through collusion or fraud, she could have proved that as a defense in this case. She made no attempt to prove anything of the kind. It would make no difference that the judgment was for damages.

The question is not whether there was an intent to defraud plaintiff. The transfer was not in good faith if made after insolvency, simply with a view of escaping liability, and when there was no real sale of the stock. Such a transfer is colorable only.

The judgment of conversion is not an estoppel. A corporation after insolvency cannot, by converting the stock of its shareholders, relieve them of liability upon their stock, and it matters not what the motive may be which induced the act of conversion.

There is no conflict in the evidence. It does not support the findings, and therefore the order and judgment are reversed and a new trial ordered.

McFARLAND, J., and HENSHAW, J., concurred.