[S. F. No. 2490. Department One—June 13, 1903.]

PEOPLE'S HOME SAVINGS BANK, Respondent, v. MATTIE S. RICKARD, Appellant.

CORPORATIONS—INSOLVENT BANK — ACTION AGAINST STOCKHOLDER — UNPAID SUBSCRIPTION—FRAUDULENT TRANSFER.—A stockholder in an insolvent banking corporation is liable to an action in its name to recover the amount remaining unpaid upon the subscription to its capital stock, for the payment of the depositors and creditors of the bank, notwithstanding a transfer of the stock prior to the call, where it appears that such transfer was fraudulently made to an insolvent person, knowing him to be insolvent, for the purpose of relieving the stockholder from liability.

ID.—PRIMA FACIE SHOWING—TRANSFER BY INSOLVENT TRANSFEREE—DEFENSE—BURDEN OF PROOF.—It is sufficient, *prima facie*, to sustain a recovery against the stockholder, to show the transfer to an insolvent transferee, knowing the corporation to be insolvent; and the burden is upon the stockholder to allege and prove, as matter of defense, that the insolvent transferee had subsequently transferred the stock to a responsible person.

ID.—CONSTRUCTION OF FINDINGS—INFERENCES—OWNERSHIP OF STOCK. —LIABILITY FOR UNPAID CAPITAL.—The findings of the court should receive such a construction as will uphold, rather than defeat, the judgment, and inferences which may be made from the facts found will be deemed made to support the judgment. A finding that defendant was not the owner of the stock after the date of the transfer, except as otherwise set forth, is to be construed with other findings made, showing that a fraudulent transfer was then effected, which left the defendant the owner only in the sense of liability for the unpaid capital.

ID.—TRANSFER OF STOCK TO DEFENDANT—WAIVER OF BY-LAWS BY CORPORATION—DIVIDENDS.—Although the transfer of stock to the defendant was not made in compliance with the by-laws of the corporation, yet when the corporation accepted the transfer upon its books and canceled the old certificate, and issued a new certificate to the defendant, and paid dividends to the defendant thereupon; the corporation thereby waived compliance with its by-laws, and could not thereafter revoke the waiver; and the defendant became a stockholder as fully as if every requirement of the by-laws had been complied with.

ID.—RETRANSFER TO ANOTHER INSOLVENT—KNOWLEDGE—AGENCY—ACCEPTANCE OF TRANSFER UPON BOOKS.—The retransfer by the insolvent transferee of the defendant to another insolvent transferee cannot affect the liability of the defendant to an action for the unpaid capital stock. It is immaterial whether the defendant or the first insolvent transferee knew of the insolvency of the second transferee. The first insolvent transferee cannot be deemed an agent of the defendant for the purpose of making the second transfer; nor can the acceptance of the second transferee upon the books of the company divest the defendant of liability.

ID.—FORMER JUDGMENT—ACTION AGAINST ORIGINAL OWNER OF STOCK —PRIOR TRANSFER—COMPROMISE.—A former judgment of compromise of the liability of the original owner of the stock transferred to the defendant in an action against him, to which the defendant was not a party, is not available as an estoppel in this action against the defendant, where it appears that prior to the commencement of the former action a transfer had been made by such owner to the defendant on the books of the corporation, which had been recognized by the corporation, that none of the money paid upon such compromise was intended to be a payment on account of the defendant's stock, and that the allegations in the former action were not inconsistent with defendant's then ownership of the stock so transferred.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Charles P. Eells, for Appellant.

The satisfied judgment against McDonald, in the former action, the complaint in which includes defendant's stock, is a bar to this action. The compromise in that action was valid. (Morawetz on Private Corporations, 2d ed., pars. 114, 302, 841; Thompson on Corporations, secs. 1553, 1634, 2933, 2934; 7 Am. & Eng. Ency. of Law, 2d ed., p. 281.)   The liability follows the shares, and there can be but one recovery on account of the same stock, and, once met, the owner takes it free from liability.   (Cook on Corporations, sec. 261, note; *Chesley* v. *Pierce*, 32 N. H. 388; *Thebus* v. *Smiley*, 110 Ill. 316.) The consent judgment against McDonald was a waiver of all defenses, and was absolutely conclusive of all rights, and an unconditional surrender of the field of controversy, and is absolutely conclusive.   (*Secrist* v. *Zimmerman*, 55 Pa. St. 446; *McCreery* v. *Fuller*, 63 Cal. 30; *Partridge* v. *Shepherd*, 71 Cal. 475.)   The fact that the bank claimed a larger sum on the whole stock originally owned by him, including defendant's shares, than it recovered, did not make its judgment against him any the less a bar for the residue claimed.   (*Barnum* v. *Reynolds*, 38 Cal. 643; *Wetmore* v. *San Francisco*, 44 Cal. 294; *Ryan* v. *Fitzgerald*, 87 Cal. 345.)   It is illogical and unjust to hold both the transferrer and the transferee liable as owners of the same shares at the same time.   (Thompson on Corporations, sec. 3311.)   If the corporation believes that the ostensible owner is not the actual owner of the stock, it may sue either, but not both.   The principle of principal and agency here applies.   (Thompson on Corporations, sec. 3205; Mechem on Agency, sec. 498; Cook on Corporations, sec. 253.) A valid transfer of the stock upon the books was made by the defendant, and by her transferee, both recognized by the corporation; and this exonerates the defendant from all liability for calls thereafter made.   (Morawetz on Private Corporations, 2d ed., secs. 159, 161, 858, 888; Cook on Corporations, 256; Thompson on Corporations, 3221, 3222, 3289, 5253; *Visalia etc. R. R. Co.* v. *Hyde*, 110 Cal. 636; [1] *Isham* v. *Buckingham*, 49 N. Y. 216; *Cutting* v. *Damerel*, 88 N. Y. 410; *Upton* v. *Burnham*, 3 Biss. 520; *Merrimac Mfg. Co.* v. *Levy*, 54 Pa. St. 229.[2])   The transferrer is not bound at his peril to know

[1] 52 Am. St. Rep. 136.         [2] 93 Am. Dec. 697.

that the tranferee is insolvent. (*Miller* v. *Great Republic Ins. Co.,* 50 Mo. 55; Thompson on Liability of Stockholders, 215; Thompson on Corporations, 3261.)

Charles P. Eells, and Garret W. McEnerney, on Petition for hearing in Bank.

Inferences of fact cannot be made to support a judgment. (*Coveny* v. *Hale,* 49 Cal. 556; *De Celis* v. *Porter,* 65 Cal. 10; *Chandler* v. *People's Home Sav. Bank,* 65 Cal. 499; *Salisbury* v. *Shirley,* 66 Cal. 228; *Hibberd* v. *Smith,* 67 Cal. 556;[1] *Bull* v. *Bray,* 89 Cal. 292.)

Stratton & Kaufman, for Respondent.

The transfer to an insolvent of the stock of an insolvent bank, by collusion, to relieve the transferrer from liability, will not have that result. (*Bowden* v. *Johnson,* 107 U. S. 26; *National etc. Co.* v. *Story etc. Co.,* 111 Cal. 537, 538; *Welch* v. *Sargent,* 127 Cal. 78; Thompson on Liability of Stockholders, sec. 215; *McClaren* v. *Franciscus,* 43 Mo. 468; *Altman's Appeal,* 98 Pa. St. 518.) The findings are to be reconciled and liberally construed to support the judgment. (*Ames* v. *San Diego,* 101 Cal. 290; *Warren* v. *Hopkins,* 110 Cal. 506; *Merrill* v. *Merrill,* 102 Cal. 317; *McCray* v. *Burr,* 125 Cal. 636; *Murray* v. *Tulare etc. Co.,* 120 Cal. 311; *Spaulding* v. *Dorr,* 118 Cal. 426.) The former judgment against McDonald in the action against him to which this defendant was not a party or privy, and which did not involve the merits of this action, is not a bar to this action. (1 Freeman on Judgments, 4th ed., pp. 291, 496, 497, 498.) McDonald was not responsible for the defendant's debt, and did not pay it in fact. The money must have been accepted for that purpose to constitute such payment. (*Martin* v. *Quinn,* 37 Cal. 58; 18 Am. & Eng. Ency. of Law, 187, n. 3; *Grice* v. *Scarborough,* 2 Spear, 649.[2])

ANGELLOTTI, J.—This action was brought by plaintiff, an insolvent banking corporation, to recover from defendant an amount alleged to be due from her as a stockholder of plaintiff, on a call of unpaid capital. The whole of the

[1] 56 Am. Rep. 726.    [2] 42 Am. Dec. 391.

amount remaining unpaid upon the capital stock of plaintiff was, at the date of the call, September 30, 1895, and ever since has been, necessary to pay depositors and creditors of the corporation.

Plaintiff obtained judgment, and defendant appeals therefrom and from an order denying her motion for a new trial.

1. It is alleged that the judgment is not supported by the findings, in that there is no finding that defendant was a stockholder at the date of the call. The complaint alleges that she was the owner of the stock at all times since September 28, 1891, and the court found "that since November 7, 1893, she has *not* been the owner or holder of said 650 shares, except as otherwise in these findings set forth." There is nothing in the findings showing that she was, after November 7, 1893, the owner of the stock, and the record shows that on that date she effected a transfer of the legal title thereto to one S. J. Rickard, and that since that time she has not been in any true sense of the word an owner of any interest therein. It is of course ordinarily true that one cannot be personally liable for a call of unpaid capital, unless he was owner of the stock at the time of the call, and, therefore, in the ordinary case, a failure on the part of the court to find the fact of such ownership would be fatal to the judgment. But a well-established exception to this rule exists in a case where a stockholder in an insolvent corporation, knowing that the corporation is insolvent, transfers his stock to an insolvent person, knowing him to be insolvent, for the purpose of relieving himself from liability. For the reason that such a transaction would be a fraud upon the creditors of the corporation and the other shareholders, such a transfer, although valid between the parties, is held to be void as against creditors and other shareholders, and the liability of the transferrer for the unpaid capital remains unaffected. This exception to the general rule has been recognized in this state. (See *National etc. Co.* v. *Story etc. Co.,* 111 Cal 537, and authorities there cited. See, also, *Bowden* v. *Johnson,* 107 U. S. 251; Cook on Corporations, secs. 263-265; Morawetz on Private Corporations, 2 ed., secs. 159, 161, 858, 888.) So that, as between the corporation maintaining action for the creditors and such a fraudulent transferrer, a finding of ownership by the trans-

ferrer would be technically correct, notwithstanding the transfer. But such a finding is not in such a case essential as a basis for a judgment against the transferrer, if other facts are found which bring the case within the exception above stated. The complaint in the case at bar contains, in addition to the allegation of ownership by defendant, allegations of a transfer of the stock by defendant to one S. J. Rickard, on or about November 7, 1893, under such circumstances as would leave her liable for the unpaid capital, notwithstanding the transfer. The admissions of the answer and the findings of the court fully and completely sustain these allegations. According thereto, she at that time made the transfer of the stock to Rickard, for a consideration of ten dollars, knowing the corporation to be insolvent, and knowing that a call was about to be made by the directors for the unpaid balance, and knowing Rickard to be insolvent, with the intent to avoid her liability and defeat her obligation to make such payment, and said Rickard was at said time, and has continued to be, insolvent. Under these circumstances she would remain liable on the shares for any unpaid capital. But it is urged that these facts do not show a liability continuing to the date of the call, September 30, 1895, for the stock may have been transferred from Rickard to a responsible person. While such a transfer of stock of an insolvent corporation is very improbable, it is possible, and such a transfer to a responsible person might have destroyed defendant's liability, for it would have been no longer necessary for the protection of the creditors of the corporation. But we are satisfied that the corporation makes out a complete case by showing a fraudulent transfer under the circumstances already detailed, and that it is for the transferrer, who has by the transfer parted with the legal title to and all control over the stock, although she remains, as to creditors, the owner, for the purpose of being compelled to pay the unpaid capital, to allege and prove any subsequent event that may have relieved her of liability. It is a matter of defense. The transfer to Rickard having been successfully impeached, the burden was cast upon defendant to show that the stock had come into the hands of a responsible person. No transfer from Rickard is pleaded, and, while the evidence did show

such a transfer, it was admitted that his transferee was insolvent.

It is well settled that the findings of the court should receive such construction as will uphold, rather than defeat, the judgment, and it has been held that when, from the facts found by the court, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court. (*Krasky* v. *Wollpert,* 134 Cal. 338; *Breeze* v. *Brooks,* 97 Cal. 72-77.) Findings are to be read and considered together and liberally construed in support of a judgment, and, if possible, are to be reconciled so as to prevent any conflict upon material points. (*Murray* v. *Tulare Irrigation Co.,* 120 Cal. 311; *Ames* v. *City of San Diego,* 101 Cal. 390.)

The express finding that defendant was not since November 7, 1893, the owner or holder of the stock, except as otherwise set forth, taken in connection with the other findings, simply means that on that date she effected the fraudulent transfer to Rickard, and that since said time she has been the owner only in the sense that she is liable for the unpaid capital.

2. It is claimed that defendant never was a stockholder or subscriber to plaintiff's stock. It appears that defendant's father, Richard H. McDonald, was on September 28, 1891, the owner of the stock, and that on that day he indorsed and surrendered the certificates therefor to plaintiff, and requested the issuance of a certificate in lieu thereof to defendant, which was done. This certificate recited that defendant was the owner of six hundred and fifty shares of plaintiff's capital stock, transferable on its books on receipt of the same properly indorsed. R. H. McDonald delivered it to defendant, who retained it up to the time of the transfer to Rickard. During the time she held it, she received three dividends thereon, for two of which she personally receipted in the dividend-book, while the third was forwarded her by plaintiff, in response to her request. The corporation recognized her as the owner by issuing to her a certificate, by paying her the dividends, and by accepting her transferee as an owner. But inasmuch as the by-laws of plaintiff provided that no stockholder shall sell or dispose of any of his stock

unless the name of the purchaser shall have first been submitted to the board of directors and approved by them, and said purchaser shall have signed the by-laws, and, further, that no transfer of stock will be made upon the books of the corporation until the above provisions have been complied with, and no transfer shall be valid until so entered on the books, and defendant's name was not submitted to the directors, and she never signed the by-laws, it is claimed she never became a stockholder. Learned counsel for defendant admit that the claim of plaintiff, that these provisions of the by-laws were for the protection of the plaintiff bank, and might be waived by it, is supported by reputable authority. That they were waived by plaintiff is established by the fact that the transfer was made upon the books of the corporation. The plaintiff canceled the old certificate of R. H. McDonald and issued a new certificate to defendant; it paid her the accruing dividends, and it recognized her transferee, S. J. Rickard. She received her certificate, held it until the transfer to Rickard, and received the accruing dividends, and is therefore not in a position where she can successfully contend that she never became a stockholder. The bank having once waived the requirements of its by-laws, by accepting defendant as a stockholder, and entering the transfer upon its books without her signature to the by-laws, and issuing her a certificate, which she accepted, could not subsequently obviate the effect of such waiver. The waiver being made, and the stock accepted by her, she at once became a stockholder as fully as if every requirement of the by-laws had been complied with, and the mere fact that some six years thereafter plaintiff brought suit against her transferrer for the unpaid call on the stock cannot affect the question. The cases cited by defendant on this point would be applicable if the plaintiff corporation had from the beginning refused to recognize the transfer to defendant, but they entirely fail to support her contention under the circumstances here appearing.

3. The evidence established the fact that eight months before the call was made the stock was legally transferred by Rickard to one Hardee, to whom a new certificate was issued. It was admitted that at the time of the transfer Hardee was insolvent, and that he continued insolvent to the time of the

trial. It did not, however, appear that either defendant or Rickard knew Hardee to be insolvent. It is claimed that this transfer to Hardee operated to relieve defendant of further liability, first, upon the theory that, granting the sale by defendant to Rickard to be void as against the bank, Rickard was her agent with reference to the stock, and acted as such in the sale to Hardee, and that, consequently, knowledge on the part of defendant or her agent of the insolvency of Hardee was essential to a continuance of liability, and, secondly, upon the theory that the bank having recognized the transfer to Hardee, the transferrer was exonerated from further liability. There was, however, no relation of agency between defendant and Rickard. As against defendant, Rickard became the absolute owner of the stock, and defendant had no further control over it. So far as she was concerned, he could transfer it to whomsoever he desired, and her knowledge or want of knowledge of the financial condition of his successors in interest was immaterial on the question of her liability to the creditors of plaintiff. As already intimated, a different question would be presented if the stock had passed into the hands of one financially able to respond to the call, but that question is not here presented.

The acceptance of Hardee by plaintiff as a stockholder cannot, under the circumstances of this case, be held to divest defendant of liability. The general rule is as contended by appellant. The transferee, accepted by the corporation, ordinarily takes the place of the transferrer, succeeds to all his rights, and assumes all his liabilities, and the corporation cannot hold the transferrer for subsequent calls on the stock. But we are here dealing with the exception to the rule,—a case of a fraudulent transfer of stock in an insolvent corporation to an insolvent, for the purpose of escaping liability,—and an insolvent corporation cannot in such a case relieve the fraudulent transferrer of liability on his stock by going through the form of recognizing such fraudulent transfer and accepting the transferee as a stockholder. This distinction is recognized in the case of *Stewart* v. *Walla Walla etc. Co.*, 1 Wash. St. 521, cited by defendant as supporting her contention, where a transfer in good faith had been accepted by the corporation, and the court said that the fact

that the transfer was made in good faith practically determined the question. In *National etc. Co.* v. *Story etc. Co.,* 111 Cal. 537, this court held that a corporation, after insolvency, cannot, by converting the stock of its shareholders, relieve them of liability upon their stock, and it matters not what the motive may be which induced the act of conversion. In a case of this character the plaintiff in reality represents the creditors and depositors of the corporation, for it is admitted that the whole amount remaining unpaid upon the capital stock is necessary for the payment of such creditors. The supreme court of the United States said, in *Webster* v. *Upton,* 91 U. S. 65, 71: "All the cases agree that creditors of a corporation may compel payment of the stock subscribed, so far as it is necessary for the satisfaction of the debts due from the company. This results from the fact that the whole subscribed capital stock is a trust fund for the payment of creditors when the company becomes insolvent. From this it is a legitimate deduction that the stock cannot be released; that is, that the liabilities of the stockholders cannot be discharged by the company to the injury of creditors without payment." (See, also, Thompson on Corporations, secs. 1511, 1514, 5253; *Bowden* v. *Johnson,* 107 U. S. 251, where the transfer had been made on the books of the company; *Upton* v. *Tribilcock,* 91 U. S. 45; *National etc. Co.* v. *Story etc. Co.,* 111 Cal. 537.) It is well settled that where the corporation is insolvent mere acceptance by the directors of a new stockholder who is insolvent will not defeat any existing claim against the solvent transferrer for the unpaid subscription. The acceptance by the insolvent corporation of Rickard and Hardee as stockholders had no such effect in the case at bar. None of the cases cited by learned counsel for defendant sustain their contention, for in none were the facts such as to bring the case within the exception to the general rule.

4. It appears that in the year 1897, the plaintiff instituted an action in the circuit court of Norfolk County, state of Virginia, against Richard H. McDonald, and that in the complaint therein it was alleged that said McDonald had subscribed for and received 3,780 shares of plaintiff's stock, and, having paid thereon $33.33 per share, had promised to pay

the remaining $66.66 per share whenever the same should be called in and demanded by plaintiff. It was sought by the suit to recover this unpaid capital from him upon the call involved in the case at bar. That the 650 shares transferred to defendant in 1891 were included in the 3,780 shares upon which recovery was sought in that case is demonstrated by the evidence. It was also sought in that action to recover on some 2,000 other shares, alleged to have been put by McDonald in the name of others to escape liability. McDonald appeared in the action, denying all indebtedness, and alleging that, even if at all technically indebted, it was in a comparatively small and insignificant sum, and further alleging a compromise for $15,000 for all his indebtedness.

The compromise stipulation filed recited an agreement between the parties "that the amount of the alleged indebted-·ness of the defendant, Richard H. McDonald, to the People's Home Savings Bank, on all accounts and causes of action set out and mentioned in the bill in this cause, has been and is hereby fixed by compromise and agreement between them at the sum of $15,000, . . . and that when said sum of $15,000 is paid by the said Richard H. McDonald . . . it shall be and shall stand as a full settlement, compromise, payment, and satisfaction of any and all indebtedness and alleged indebtedness of the said Richard H. McDonald to the said People's Home Savings Bank, and of all actions and causes of action set up or mentioned by the said People's Home Savings Bank, the complainant, by its bill in this cause." The judgment in terms followed the stipulation, and the $15,000 was paid by McDonald.

All this is pleaded by defendant, who was not a party to the Virginia action, in bar of plaintiff's claim against her. The plaintiff had the authority to effect a compromise with its delinquent stockholders for the benefit of its creditors, and there can be no doubt that, so far as R. H. McDonald is concerned, the judgment based on the compromise was valid and binding, and released *him* from all further liability on all causes of action set up or mentioned in the complaint in the Virginia case. A different question is, however, presented as to defendant, who had succeeded McDonald as the owner of the stock here involved four years before the call and six

years before the Virginia suit, and who maintains that all claims for the unpaid capital were fully satisfied as to the 3,780 shares included in the complaint, and especially as to her 650 shares, by the $15,000 compromise of the claim of over a quarter of a million of dollars against McDonald. Ordinarily, a judgment affects only the rights of the parties to the action and their successors in interest by title subsequent to the commencement of the action. (Code Civ. Proc., sec. 1908, subd. 2.) Defendant was not such a successor of McDonald. She was at the time of the commencement of the action against him the owner of the stock, and had been such for many years, and McDonald was under no obligation to her to pay upon her stock unpaid capital called in four years after the stock had been transferred to her, in the absence of some special agreement with her relative thereto. The stipulation and judgment in the Virginia action do not purport to include a settlement of anything other than the *liability of Richard H. McDonald.* The compromise and settlement was "of all indebtedness and alleged indebtedness *of the said Richard H. McDonald* to the said People's Home Savings Bank," and "of all *actions* and *causes of action* set up or mentioned by *the said People's Home Savings Bank,* the complainant, by its bill in this cause,"—i. e. of all actions and causes of action *against McDonald,* for there was no other cause of action in the bill. This language could not by any fair construction be held to include a cause of action against some other person not a party to the action. The judgment was, by its terms, a complete release to McDonald and his successors, by title subsequent, but, as already shown, there could be no such successor by title subsequent to the stock here involved, for McDonald had already parted with it. But appellant contends that there is a distinction between this case and the ordinary case, by reason of the nature of the indebtedness, and that therefore, defendant, who has no privity with McDonald in the Virginia judgment, may have the benefit of said judgment. It is true that the liability in a case of this character is upon the *stock,* and it may be conceded, for the purposes of this case, although we do not here so decide, that, had a party not liable for the call actually paid the amount due thereon, there could not be a recovery on

the same stock from another party, simply because the debt had been fully paid. Defendant has, however, failed to show any actual payment on account of the liability on this particular stock. The recitals in the Virginia stipulation and decree do not establish any such payment, so far as she is concerned, for she was not a party thereto or in privity therewith. They do not show any admission by plaintiff as to payments on any particular stock that is binding in favor of any one except the defendants in that action and their successors by title subsequent.

And when we consider the evidence, it is apparent that none of the $15,000 was intended to be a payment on account of any of defendant's stock. An affidavit constituting a part of the Virginia record, introduced in evidence by appellant, showed that, of the 3,780 shares upon which the claim therein was based, only 385 shares stood in the name of McDonald at the date of the call, and other evidence received without objection showed that the defendants in the Virginia action refused to consider with view of settlement any other than said 385 shares, and that they insisted that, if any settlement was reached, it must be on a compromise of the liability claimed by reason of said 385 shares. The amount due thereon was over $25,000, but McDonald claimed that, even as to some of the 385 shares, he was not liable, and the amount was finally fixed at $15,000. It is apparent that, so far as *specific stock* was concerned, only the 385 shares in McDonald's name were considered, and that, in favor of strangers to the Virginia proceeding, no other stock can be held to have been paid for in whole or in part. The finding of the lower court, that it is not true that the claims of plaintiff against this defendant for such unpaid balance on the 650 shares here involved were paid or satisfied in full, or in part, or at all, by the said payment of $15,000, is sustained by the evidence. We see no basis for the claim that the bringing of the Virginia action against McDonald estopped plaintiff from afterwards proceeding against defendant. If the plaintiff mistakenly commences its action against the wrong party, a party not liable, we know of no reason why it cannot subsequently sue the right party. There was no such relation between McDonald and defendant as to these shares as would compel

plaintiff to make its election between them as to which one it would sue. They were not, as suggested by learned counsel, "principal and agent," in any sense of the term.

At the time of the commencement of the Virginia action, it was too late for plaintiff to repudiate defendant's ownership, which it had long before fully recognized, but, as a matter of fact, the allegations of the complaint in that action did not show any attempt at such repudiation. The claim of liability of McDonald's part was based entirely on the fact that he had originally subscribed for the 3,780 shares of stock, in which were included defendant's stock, the theory apparently being, that, as an original subscriber, the law implied a promise on his part to pay the unpaid capital, regardless of whether or not he continued to be the owner at the time of the call. There was an entire absence of allegation that he was then the owner, or that he had made any fraudulent transfer. The allegations of the complaint were entirely consistent with the fact of Mrs. Rickard's then ownership.

We are satisfied that the Virginia suit in no way affected plaintiff's right to proceed against defendant.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.

Rehearing in Bank denied.