[Civ. No. 6458. First Appellate District, Division One.—November 1, 1928.]

NELLIE CE'CILIA CAMPION, Respondent, v. CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant.

J. E. McCurdy for Appellant.

C. J. Creegan and Jered A. Maguire for Respondent.

CAMPBELL, J., *pro tem.*—This is an action to recover certain monthly indemnities alleged to be due plaintiff from defendant corporation on an insurance contract.

On July 19, 1922, defendant issued to plaintiff the insurance policy in question, and on November 4, 1926, plaintiff sustained injuries which resulted in her total disability. Some two months after the accident causing the injury plaintiff made her first claim for compensation. After an investigation the company commenced paying the monthly indemnity called for in the contract of insurance. Four such payments were made, after which defendant company refused further payment, claiming that plaintiff had a very pronounced scoliosis (curvature of the spine), which scoliosis contributed to the disability of plaintiff. The court found in favor of plaintiff and rendered her judgment in the amount of $130 per month from March 17, 1927, to the date of the judgment, with interest at seven per cent per annum until paid. Motion for new trial was made and denied and defendant has appealed from the judgment and the order denying a new trial.

Appellant urges that respondent made representations in her application for the insurance contract which were false and consequently void the policy; failed to establish her case by a preponderance of the evidence, and the findings

of fact are not supported by the evidence. ■ The false representation by respondent in her application for insurance, which appellant claims voids the policy, is: "I have not, nor am I now suffering from . . . any chronic or periodical mental or physical ailment or disease, nor am I crippled or maimed, nor have I any defect in hearing, vision, mind or body. No exceptions." As proof of her statement being false appellants directs us to the testimony of the doctors—five in number—who testified at the trial, who said that respondent did have a pronounced scoliosis. None of them, however, examined her until after the accident, over four years subsequent to the date of her application for a policy, when her statement claimed to be false was made.

In support of its contention that this asserted false statement voids the policy appellant has cited us to section 2580 of the Civil Code: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time when the representation becomes false," and section 2610 of the same code: "The violation of a material warranty, or other material provisions of the policy, on the part of either party thereto, entitles the other to rescind," and to authorities holding the general rule to be that warranties as to health of the insured will be strictly construed, and if false in any particular, the policy will be voided, regardless of the good faith of the assured.

It is not necessary to review the authorities cited, as the question presented involves not so much the application of legal principles as it does the determination of a question of fact.

It is conceded by appellant that no witnesses, not even the experts produced by it, attempted to say that the scoliosis existed on July 19, 1922, the date of respondent's application for a policy; that such experts could not so testify "for the simple reason that not a single one of the witnesses, least of all the experts produced by appellant, could truthfully testify to such a fact, they not having known respondent or examined her at the time in question." Appellant directs us to the testimony of Dr. Warren, that "she was suffering with an extensive deformity of the spinal column"; and Dr. Ryan: "There was clinically an old

scoliosis.'' Continuing, the doctor testified that lots of us have scoliosis of some kind; some of them are congenital; most scoliosis is acquired by defective posture at a desk; ''you can have a scoliosis and you can go on through life quite a way, and the muscles and general bodily activity keep away the symptoms, and compensate for that faulty posture, but when we get towards middle life, or a little beyond and those muscles begin to break down, we begin to get symptoms, begin to get backache; so I would say, with a scoliosis of any degree, that later in life or towards middle life, we will begin to get symptoms.'' Appellant also directs our attention to the testimony of Dr. Fleming, that in his opinion the scoliosis is not the cause of the present disability inasmuch as she worked steadily for eight years at the arduous work as a nurse without complaints or symptoms referable to her back.

From this testimony, as against the testimony of respondent that at the time she made her application for the policy she did not say anything about having a spinal deformity as she did not know she had one, and the testimony of respondent's witness Dr. Warren, who had known respondent somewhat intimately for eight or nine years, she having been employed by him at different times as nurse, and who testified he did not know that she had a deformity of the spine until his examination of her after the accident, appellant asks us to draw the inference that such scoliosis existed at the time of the injury complained of, contrary to the inference drawn by the trial court. Where the facts established may reasonably authorize one of two opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court, the same as where the trial court decides upon the weight of contradictory evidence (*MacDermot* v. *Hayes*, 175 Cal. 95 [170 Pac. 616]). The findings of the trial court are to be liberally construed so as to uphold rather than to defeat its judgment. It is the province of the trial court to make any inference of fact from the evidence or from the facts found by it, and the appellate court will not draw a different inference from that drawn by the trial court to defeat its judgment (*Paine* v. *San Bernardino etc. Co.*, 143 Cal. 654 [77 Pac. 659]; *Breeze* v. *Brooks*, 97

Cal. 77 [22 L. R.. A. 257, 31 Pac. 742]; *Peoples Homes Sav. Bank* v. *Rickard*, 139 Cal. 285 [73 Pac. 858]).

The words descriptive of the scoliosis such as "obvious," "old" and "definite" are relative terms and too indefinite in point of time to support the contention that a condition found to exist subsequent to November 4, 1926, existed on July 19, 1922 (*Diamond* v. *Weyerhaeuser*, 178 Cal. 540, 543 [174 Pac. 38]). Furthermore, if respondent did not know of the existence of this scoliosis or deformity when she applied for indemnity insurance and such condition was not noticeable to the experienced and practiced eye of a physisian who had known her intimately, the court could well draw the inference that such condition did not exist at the time respondent signed the application containing the statement that she was not crippled or maimed, nor suffering from any defects in mind or body. "The completion of the contract of insurance is the time to which a representation must be presumed to refer" (Civ. Code, sec. 2577). Here the contract was completed and the written evidence of it delivered on July 19, 1922.

Appellant's next contention is that respondent failed to establish her case by a preponderance of the evidence—that the evidence does not establish the fact that the disability was caused solely by the accident, but, on the contrary, shows that the scoliosis contributed to the disability. In support of this contention appellant cites us to the testimony of Doctors Ryan and Catton, called as witnesses by it, the former testifying that the scoliosis found to exist contributed definitely to respondent's disability, and the latter stating that the scoliosis, together with other abnormalities found to be existing in respondent, contributed to her present disability. Dr. Warren, appellant's expert, however, seems to have entertained a contrary opinion; he testified: "Well, at the time of the first examination when I found the curvature and thought that she had a dislocation or injury, I thought that possibly it might have had some aggravation, that is, the curvature may have aggravated some of her symptoms or prolonged her trouble, but afterwards we found the trouble was not in the sacro-iliac joint at all and our conjectures in case were wrong. Q. When did you arrive at this latter decision? A. When I saw the X-ray plates made by Dr. O'Neill." On this con-

flict the finding of the trial court is conclusive on the question of preponderance of evidence (*Still* v. *San Francisco & Northwestern Ry. Co.*, 154 Cal. 559, 564 [129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac. 672]).

▇ Under appellant's last contention that the findings of fact are not supported by the evidence, it complains of the following findings in this respect: (a) that plaintiff has been under the care of a legally qualified physician or surgeon; (b) that plaintiff has been directly disabled as the result of the accident, and, (c) that it is not true that plaintiff and cross-defendant, during the month of December, 1926, and January, February, and March, 1927, or at any other time was suffering from a disability caused by a pre-existing spinal deformity. This last objection has already been discussed. As to the other objections there is no merit in appellant's contentions. As to the first, it may be said that Dr. Markel, whose qualifications were admitted, testified that Miss Compton was under his care since December 3, 1926, and has been under his care regularly; that he straightened her back and ordered a surgical corset for her, which she wore about three weeks, but as she was not relieved he made a plaster of paris jacket for her which she has worn ever since; that aside from his personal treatments she had quite a number of physiotherapy treatments in his office given by a masseur in his employ after an examination given her by him before the treatments; that he examined her within a week of the trial. This sufficiently complies with the clause in the policy requiring that in order to recover for the full loss of time the insured must be under the regular care of a legally qualified physician or surgeon.

▇ In support of the remaining objection that the evidence does not support the finding that plaintiff has been directly disabled as the result of the accident, appellant directs our attention to the following testimony of plaintiff as establishing its contention: "When I was hurt I did not realize I was going to be sick for any length of time. I expected to be able to return to my work. It was never my intention to draw on my insurance policy, or ask the company to help me unless it was absolutely necessary." This statement that she did not realize she was going to be sick for any length of time does not alter the actual situ-

ation. The testimony shows that she was directly disabled; that she immediately suffered nausea, sleeplessness, and that severe pains followed her fall and injury. Her belief that her condition would improve and that she could shortly return to work was not justified; she unfortunately continued to be so disabled.

The judgment and order are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 1, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 31, 1928.

All the Justices present concurred.