[Civ. No. 5049.   Third Appellate District.—November 5, 1934.]

JOHN UTELLUS SMALLEY, Respondent, v. MOUNTAIN STATES LIFE INSURANCE COMPANY (a Corporation), Appellant.

J. F. Riley for Appellant.

H. B. Churchill for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant in this action for compensation at the rate of $100 per month from the twenty-sixth day of March, 1930, to and including the twenty-sixth day of June, 1931. From this judgment the defendant appeals.

The judgment is based upon a health insurance policy executed and delivered by the defendant to the plaintiff on or about the tenth day of December, 1929.

The only question presented for consideration upon this appeal is whether the disease with which the plaintiff was found to be suffering by the court, and for which judgment was awarded from the twenty-sixth day of March, 1930, to and including the twenty-sixth day of June, 1931, was contracted or had its inception within thirty days after the tenth day of December, 1929. It being provided in the policy that if the disease from which the plaintiff might subsequently suffer had its origin within thirty days of said date, compensation would not be allowed.

The court, after finding the issuance and delivery of the policy insuring the plaintiff against loss of time on account of disability resulting from disease, found that the cause of the disease originated more than thirty days subsequent to the tenth day of December, 1929, and that the disease from which the plaintiff suffered necessitated attention by a duly licensed physician, as required by the conditions of the policy. As the question of the time of the origin of the disease is the only issue presented, we need not set forth any of the conditions of the policy.

It is the contention on the part of the appellant that the evidence does not support the findings of the court, and also that the court erred in the exclusion of certain testimony hereinafter considered.

The record shows that the plaintiff went to the hospital on or about the twenty-sixth day of March, 1931, and was found to be suffering from tuberculosis. The plaintiff himself testified that he first noticed symptoms of the trouble about ten days previous to his entering the hospital.

E. J. Helgren, the city health officer of the city of Santa Rosa, testified that the plaintiff worked for the city of Santa Rosa from approximately June 15, 1928, to somewhere around March 17, 1930; that he saw the plaintiff two or three times every day; that it was his duty to supervise the work of the plaintiff; that during that time the plaintiff was never sick; had done heavy work; that his work was plowing; using a tractor and horses; sowing grain; working in hay fields; and doing general work around the farm; digging ditches and other work. The plaintiff worked eight hours a day; was never sick; had plenty of color; was out in the sun all day; was, in fact, the picture of health; that he knew the plaintiff before the plaintiff went to work for the city, and while the plaintiff was working for the Levin Tanning Company; that he never noticed any difference in the appearance of the plaintiff; that the plaintiff had had experience with ''T. B.'' institutions; at the county hospital for 28 years; had taken samples of sputum; had learned of the doctors the symptoms of active tubercular patients from his 28 years' experience; that during the time he had known the plaintiff, outside of once in March, 1930, he had never noticed any symptoms of active tuberculosis; that the time here mentioned was on or about the fifteenth day of March, 1930, when the plaintiff was very pale and had a cough.

The witness Fraser testified that he was the superintendent of the Levin Tanning Company; that the plaintiff had worked for the company some six or seven years; that he began work for the company in 1922, and so far as the witness could remember, the plaintiff had never laid off on account of sickness; that the plaintiff always had a good color; appeared to be vigorous and strong; never saw him coughing or spitting; and that the plaintiff never complained of being tired or depressed.

Wesley E. Pfister, a farmer, testified that he had known the plaintiff about 25 years; was working with the plaintiff when he took sick; had been working with the plaintiff

from January 30, 1930; that the plaintiff never showed any signs of sickness until a short time before he went to the doctor around the middle of March; that the physical appearance of the plaintiff was good. This witness also testified that he went hunting with the plaintiff every season, three or four times each season; that the plaintiff always did his share of the hunting; never heard the plaintiff complain of feeling badly or being fatigued or tired, any more than the rest of the hunters. This witness further testified that he never knew of the plaintiff having any coughing spells or complaining of fatigue or any sweats; never knew of the plaintiff being gassed.

The witness Peterson testified that he had known the plaintiff over 20 years; had observed his physical condition; had never known of the plaintiff being sick; that the plaintiff always appeared to have a good color, and was apparently strong.

The witness Gus Tisserand testified that he had known the plaintiff about 12 years; had gone hunting with the plaintiff every year until he became sick; that the plaintiff always held up his end; could outhunt the witness, and when it came to packing a deer or walking, always seemed to come in in better shape than the rest of them; never noticed any difference in plaintiff's appearance up to the time he was taken sick.

The witness Vivian N. Pfister testified that he had known the plaintiff some 21 or 22 years; during 1928 and 1929 he was not with the plaintiff every day; had hunted with the plaintiff; gone to school with the plaintiff; observed his physical condition up to the end of 1929, up to which time the plaintiff had never seemed to be fatigued on the hunting trips; hiked with him, and generally seemed in good condition.

The witness John Tisserand testified that he had known the plaintiff about 10 years; had gone hunting with him; saw him during 1928 and 1929; always thought he looked good; that the plaintiff always seemed to be the life of the party; that the plaintiff kept up his part of the hard work; that the plaintiff's condition, as to appearance, was all the same; that he did not see the plaintiff during the months of January and February, 1930.

The witness Mrs. Somner testified she had known the plaintiff about 20 years; during 1928 and 1929 he was working on the city farm and she saw him about three or four times a week; before that time, about once a week; had observed his physical condition; noticed his strength in swimming; that the plaintiff always looked healthy; that she had known the plaintiff during the years 1928 and 1929; saw him in December, 1929, January and February, 1930; during those months his appearance was very good up to the time he was taken sick; that he was taken sick along in March; noticed no difference during those three months, than during the previous years.

Dr. Fales, a witness called on the part of the plaintiff, among other things, testified as follows: ''Q. Doctor, in your opinion, would it have been possible for the disease to have developed in Mr. Smalley within a period of time, as you found it? Within a period of time from January 11th to the 23d day of March? A. Considering the type of tuberculosis, it would have been possible. Q. It would have been possible? A. Yes. Q. As I understand, you testified that this was of a type that developed quickly? A. Yes. Mr. Riley: Q. Could it develop within two months? A. It is possible, I believe, for it to develop within two months. Q. Possible. Would it be likely, doctor, for such a condition as you have described to develop within that time? A. It is surprising how fast that develops in very many cases. . . . Mr. Churchill. Q. Well, doctor, I hate to come back at you in this way—a person, a patient suffering from that type of tuberculosis, as Mr. Smalley was suffering from when he entered the hospital, that active stage, would that, or could that patient go on hunting trips and show no fatigue, work daily and show no fatigue, no coughing, no depressed or tired feeling, no sweat, no raising of sputum or any of the attendant conditions that are generally found in T. B., do you get my question? A. Yes. Q. Would that be possible? A. Very unlikely. Q. In other words, a man who had the type of T. B. that Mr. Smalley has had, in your opinion, would he be able to go out into the hills in the heat of the summer months, on the hot summer days and tramp the hills as hunters tramp, and carry deer in and keep up with the average ordinary man hunter, without showing any of the effects at all? A. No. The Court:

Well, that is, if these conditions were present, if the infection were present? A. Yes, if the infection were present. Mr. Churchill: Q. The result of the examination of the sputum, does that in any way modify your opinion that this might have developed between January 11th and March 23d or 24th? A. Not at all, because this denoted breaking down of tissue to a certain extent, and tissue can break down in a few weeks after the beginning of the disease, lung tissue. Q. In other words, nobody knows anything about T. B.? A. That is pretty true."

Dr. Shipley, a witness called for the plaintiff, among other things, gave his opinion upon the statement of the facts presented to him as follows, to wit: "Q. Assuming, doctor, that Mr. Smalley, the plaintiff in this case, had an exudative type of tuberculosis, pulmonary tuberculosis, it appeared on or about March 27th he had an X-ray taken and was examined by a physician and that it appeared to be rather active and what we call an acute type, and there appeared to be an acute development of the infection, and that, at the time of such examination there was a suggestion of a cavity only, about the 'second interstice, a little below the clavicle in the right lung, and it did develop into a cavity under such an examination, a small cavity, and there were some fibrosis involved, and an infiltration, also of the upper lobe, to a certain extent there was some infiltration about the middle lobe, and also in the upper part of the lower lobe, from your experience, would you state in your opinion, whether or not such a condition could have developed from the inception of the infection within a period of two months? A. It could."

These are only excerpts from the testimony of the doctors who, in addition to what we have said, described with considerable detail, the character of the affliction from which the plaintiff was found to be suffering. These descriptions, however, do not militate against the rights of the trial court to make its findings and draw its conclusions in accordance with the testimony just referred to. It goes only to the question of whether the disease did, in fact, have its origin within thirty days from the tenth day of December, 1929, or was of such a character that the inference could and should be drawn therefrom that the disease had its origin during that period, or long prior thereto. In support of its

contention that the disease had its origin at a time probably prior to December 10, 1929, the defendant introduced the testimony of Dr. Kruse, who gave it as his opinion that the condition of the plaintiff as described to him would lead him to the conclusion that the disease had its origin several months previous to March 26, 1930, and also for a considerable period prior to December 10, 1929.

The testimony introduced in the record tended to show that the disease was acute and had advanced quite rapidly.

During the course of the trial the defendant sought to introduce in evidence a letter written by one F. J. Herbig, a medical officer in temporary charge of the U. S. Veterans' Hospital at Livermore, California, addressed to the defendant at Hollywood, California.

The testimony likewise shows that Dr. Fales did not come in contact with the plaintiff immediately upon the plaintiff entering the hospital, but did come in contact with him inside of a month after such entrance.

It appeared from the record that the plaintiff gave instructions to the physician or officer in charge to send to the defendant the information contained in the letter, and Dr. Fales testified that he had read the record of the case from which the letter was copied. This letter was admissible for the limited purpose of showing the basis upon which Dr. Fales, to some extent, based his conclusions. However, the offer of the letter does not appear to have been made for such limited purpose, nor does the objection to its admission appear to be well taken. Notwithstanding these facts the record does not exhibit anything from which this court could draw the conclusion that the defendant suffered any material injury. The defendant had an opportunity to and did cross-examine Dr. Fales extensively, and went into the whole question of the disease, the probability of its origin, old lesions, and everything connected with the physical examination of the plaintiff, and also whatever was exhibited by the X-rays, depicting the condition of the plaintiff's lungs, giving the court as full and complete an opportunity to weigh the testimony of Dr. Fales and make its findings of fact as though the letter had been admitted into the record. The letter referred to is as follows:

"Gentlemen:

"This patient's personal history shows that in infancy he associated with a sister who had pulmonary tuberculosis. At this time, no doubt, patient received his primary infection. In January, 1930, on account of not feeling well, consulted a physician who told him he had pulmonary tuberculosis. How long he had been suffering with manifest disease, before consulting the physician, we cannot say, but on account of the amount of involvement, it must have been a fairly long time.

"The diagnosis is 1710 tuberculosis, pulmonary, chronic, moderately advanced, active (a).

"The amount of pulmonary involvement is as follows: Right lung: Fibrosis and infiltration upper lobe, middle lobe and upper part of lower lobe. There is an area suggestive of a small cavity in the apex. Left lung: No infiltration. Fibrosis in the apex. It is too soon to give a prognosis at this time. Several months' observation is required to determine probable outcome.

"Very truly yours,
"F. J. Herbig
"Medical Officer in temp. charge
"U. S. Veterans' Hospital,
"Livermore, California."

A comparison of the testimony in the record given by Dr. Fales shows that it covers everything save and except, perhaps, that certain relatives of the plaintiff had been afflicted with tuberculosis. From the fact that the quoted letter could only have been admitted and considered by the court for the limited purpose of showing a part of the basis upon which Dr. Fales founded his opinion, and the fact that Dr. Fales was subjected to a lengthy cross-examination, we cannot very well perceive how the ruling of the court prejudiced the defendant or led to a miscarriage of justice so that the error, if any there was on the part of the court, comes within the provisions of section 4½ of article VI of the Constitution.

While it is true, as contended for by the appellant, that no one testified as to the exact date when the disease resulting in the disability of the plaintiff had its origin, yet the court was presented with certain facts, conditions and circumstances from which it was incumbent upon the court to make its inferences and arrive at a conclusion.

If there is any testimony in the record justifying the inference that the origin of the disease was not within thirty days after December 10, 1929, the judgment must be affirmed. The facts before the court show that the plaintiff exhibited his normal health and performed rather heavy labor up to and within a few days before he went to a hospital on March 26, 1930. The doctors testified that in their opinion, if the plaintiff had been suffering from tuberculosis, it was not probable that he could have done the work during said period which the witnesses testified that the plaintiff performed. They also testified that it was possible for the disease to have had its origin later than thirty days after December 10, 1929. The testimony of Dr. Kruse is to the contrary. The conflict in the testimony was for the solution of the trial court.

█ What we have just stated we think presented to the trial court facts from which it might properly draw the inference that more than thirty days elapsed after December 10, 1929, before the disease with which the plaintiff became afflicted had its origin.

While a number of cases might be cited supporting the authority of the trial court to draw the inferences, make the findings, and come to the conclusions which appear in this record, we think the following excerpt taken from the case of *Campion* v. *Continental Casualty Co.*, 94 Cal. App. 621 [271 Pac. 786], is all that is necessary, to wit:

"Where the facts established may reasonably authorize one of two opposite inferences, and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court the same as where the trial court decides upon the weight of contradictory evidence. *MacDermot* v. *Hayes*, 175 Cal. 95 [170 Pac. 616]; the findings of the trial court are to be liberally construed so as to uphold rather than to defeat its judgment. It is the province of the trial court to make any inference of fact from the evidence or from the facts found by it, and the appellate court will not draw a different inference from that drawn by the trial court to defeat its judgment. (*Paine* v. *San Bernardino etc. Co.*, 143 Cal. 654 [77 Pac. 659]; *Breeze* v. *Brooks*, 97 Cal. 77 [31 Pac. 742, 22 L. R. A. 257]; *People's Home Sav. Bank* v. *Rickard*, 139 Cal. 285 [73 Pac. 858].)"

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.