[L. A. No. 5132. In Bank.—November 19, 1920.]

AMERICAN WELL AND PROSPECTING COMPANY (a Corporation), Respondent, v. C. P. BLAKEMORE et al., Appellants.

[L. A. No. 5133. In Bank.—November 19, 1920.]

AMERICAN WELL AND PROSPECTING COMPANY (a Corporation), Appellant, v. REX MIDWAY OIL COMPANY (a Corporation), et al., Respondents.

[1] CORPORATIONS — SALE OF STOCK FOR DELINQUENT ASSESSMENT — PUBLICATION OF NOTICE ESSENTIAL.—A forfeiture of stock for nonpayment of an assessment is void in the absence of a publication of notice of the delinquent sale as required by section 337 of the Civil Code.

[2] ID.—SALE OF STOCK WITHOUT PUBLICATION — ACQUIESCENCE OF STOCKHOLDERS — VALIDITY OF FORFEITURE AS TO CREDITORS.—A bona fide sale of stock for nonpayment of an assessment made without publication of notice of the delinquent sale is binding upon the creditors of the corporation where no proceedings are taken to recover the stock as provided by section 347 of the Civil Code.

[3] ID.—PURCHASE OF STOCK BY CORPORATION AT DELINQUENT SALE— TERMINATION OF LIABILITY OF STOCKHOLDER FOR UNPAID BAL-ANCES ON STOCK.—In view of sections 343 and 344 of the Civil

Code, authorizing corporations to purchase its own stock at a delinquent assessment sale, the effect of such a sale, as between the stockholder and the corporation, is wholly to divest the stockholder of all right or interest in his shares, to pass title to the corporation, and to terminate all liability on the part of the stockholder for unpaid balances on his stock.

[4] ID.—INSOLVENCY OF CORPORATION — STOCKHOLDERS NOT CHARGEABLE WITH KNOWLEDGE.—Stockholders of a corporation are not chargeable with knowledge of the corporation's insolvency.

[5] ID.—FORFEITURE OF STOCK AFTER INSOLVENCY OF CORPORATION—LIABILITY OF STOCKHOLDERS FOR UNPAID BALANCES TO CREDITORS. In the absence of fraud, collusion, or intention to prejudice the rights of creditors, stockholders of a corporation whose stock has been forfeited and purchased by the corporation for delinquent assessments are not liable to the creditors of the corporation for the unpaid balances on their stock, notwithstanding the forfeiture was made after the corporation had become insolvent.

APPEALS from judgments of the Superior Court of Los Angeles County. Pat R. Parker, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Samuel H. French and Avery & French for Appellant Blakemore in L. A. No. 5132.

Davis & Rush for Appellants Schneider and Fieber in L. A. No. 5132.

Henry K. Norton, Rhodes & Howard and Wilbur Bassett for Respondent in L. A. No. 5132.

Henry K. Norton, Rhodes & Howard and Wilbur Bassett for Appellant in L. A. No. 5133.

Samuel H. French, Avery & French and Davis & Rush for Respondents in L. A. No. 5133.

LAWLOR, J.—Both the plaintiff, American Well and Prospecting Company, a corporation, and the defendants, C. P. Blakemore, William Schneider, and Jacob Fieber, appeal from a judgment in favor of the plaintiff in the respective sums of $3,820.15 against the defendant Blakemore, $1,140 against defendant Schneider, and $1,140 against defendant

Fieber, in two actions brought to recover from the defendants certain sums alleged to be due from each of them as the balance not paid in upon their stock in the defendant corporation, Rex Midway Oil Company.

There is no dispute as to the facts. The Oil Company was organized under the laws of this state in May, 1910. All its works were located in Kern County. April 10, 1912, the company's note for $8,738.80 was executed in favor of the plaintiff. This note was not paid, and on October 27, 1913, the plaintiff secured judgment thereon against the Oil Company in the sum of $8,738, upon which judgment execution was issued but later returned wholly unsatisfied. It is this judgment which is the basis of plaintiff's claim.

At the time of its organization the Oil Company had a capital stock of two hundred and fifty thousand dollars, divided into one million shares of the par value of twenty-five cents each. It was stated on each certificate, however, that the par value was one dollar. In July, 1910, 999,980 shares were issued to F. H. Lathrop, as "fully paid-up stock," in consideration for the transfer by Lathrop to the Oil Company of a lease on certain oil lands in Kern County. Immediately thereafter Lathrop returned to the Oil Company nine hundred and fifty thousand shares to be held as treasury stock. On October 10, 1910, proceedings were duly completed for an increase in the par value to one dollar, but no certificates of stock were recalled nor were any reissued. Subsequently various blocks of treasury stock were purchased from the company by the three individual defendants. Blakemore bought 2,250 shares at four cents and fourteen thousand five hundred shares at eight cents; Schneider and Fieber each five thousand shares at twenty-five cents. Thereafter each of the last-named defendants paid an assessment of two cents per share. In December, 1912, a second assessment of three cents was levied, but the defendants failed to pay this, and their stock was declared delinquent. March 20, 1913, a delinquent sale was held at which no bids were offered, and the defendants' stock was accordingly purchased by the Oil Company itself. The transfer was duly entered on the Oil Company's books. It was found that "on the twentieth day of March, 1913, and at least six months prior thereto, and until the forfeiture of its charter thereafter, the said defendant Rex Midway Oil

Company was insolvent," and this finding is not questioned. On November 30, 1913, the Oil Company's charter was declared forfeited for failure to pay its license tax to the state.

The amended complaint herein, filed December 3, 1914, alleges that, notwithstanding the sale of the delinquent stock, defendants are the present owners thereof. On this theory it is further alleged that there is due to the Oil Company from Blakemore, Schneider, and Fieber on each share the difference between one dollar, the par value, and the respective sums actually paid for said stock plus the first assessment, also paid by them. The defendants Schneider and Fieber jointly, and Blakemore separately, answered the complaint. In each answer it was alleged that, by virtue of the above-mentioned sale, the individual defendants were no longer the owners of the stock, and therefore their liability for the sums remaining unpaid on their shares had terminated. The cause was tried by the court, sitting without a jury, and judgment was rendered for the plaintiff.

On appeal Blakemore, Schneider, and Fieber, "expressly waiving all other objections," claim that all interest which they had in the stock purchased by them was divested by reason of the sale thereof, and hence they are not now liable to the creditors of the corporation. Plaintiff's contention is that, because each certificate of the stock which was purchased by the defendants stated the par value of each share to be one dollar, the defendants are now estopped to deny that one dollar was the par value at the time they purchased the stock, and, therefore, that the measure of their liability per share is the difference, not between the amounts paid in by them and twenty-five cents, but the difference between such amounts and one dollar.

1. Before proceeding to discuss defendants' contention, it will be proper to consider plaintiff's claim "that the attempted forfeiture of the stock . . . was not a valid forfeiture . . . because the necessary statutory steps were not taken." The court found "that no publication of the notice of said sale for said delinquency was made in any newspaper published in Kern County at any time; that there was at said time a newspaper published in said Kern County"; that "in all the proceedings in and about said assessment and in leading up to said sale, all of the provisions and requirements of the law . . . regarding the levy-

ing of assessments and making calls on capital stock of corporations and the sale of stock for the nonpayment thereof, and particularly, among other things, the provisions of sections 334 to 345, inclusive, of the Civil Code, were followed and complied with except as to the failure to publish notice of delinquent sale under sections 337 and 339 . . . in Kern County.''

As to the sale of delinquent stock, section 336 of the Civil Code provides: ''Notice must be . . . published once a week, for four successive weeks, in some newspaper of general circulation and devoted to the publication of general news, published at the place designated in the articles of incorporation as the principal place of business, and also in some newspaper published in the county in which the works of the corporation are situated, if a paper be published therein.'' And section 337 of the same code reads in part: ''If any portion of the assessment . . . remains unpaid . . . the secretary must, unless otherwise ordered by the board of directors, cause to be published in the same papers in which the notice hereinbefore provided for shall have been published, a notice . . .'' Section 346 declares: ''No assessment is invalidated by a failure to make publication of the notices hereinbefore provided for, nor by the nonperformance of any act required in order to enforce the payment of the same; but in case of any substantial error or omission in the course of proceedings for collection, all previous proceedings, except the levying of the assessment, are void, and publication must be begun anew.''

[1] It is well settled in this state that in taking the necessary steps to sell stock for nonpayment of assessments ''a strict observance of the statutory mode and provision is essential.'' (*San Bernardino Inv. Co.* v. *Merrill,* 108 Cal. 490, [41 Pac. 487]. See, also, *Occidental B. & L. Assn.* v. *Sullivan,* 62 Cal. 394, 398; *Ruck* v. *Caledonia etc. Min. Co.,* 6 Cal. App. 356, [92 Pac. 194]; 14 C. J. 649.) Under this rule, there having been no publication of notice of the delinquent sale in Kern County, as required by section 337, the forfeiture was void. This conclusion finds support in section 346, for while under the provisions of that section the assessment itself was valid, the sale was defective and a new publication of notice necessary.

But section 347 provides that "No action must be sustained to recover stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or defect or irregularity in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, together with all subsequent assessments which may have been paid thereon and interest on such sums from the time they were paid; and no such action must be sustained unless the same is commenced by the filing of a complaint and the issuing of a summons thereon within six months after such sale was made." And according to the weight of authority, "a sale of forfeited shares cannot be set aside on the ground of mere irregularities unless within a reasonable time a tender is made . . . of the amount of the assessment" (14 C. J. 650). The following quotation from *Crissey* v. *Cook*, 67 Kan. 20, [72 Pac. 541], is also pertinent: "'If the forfeiture is invalid in respect of something which the parties cannot waive, and which cannot be cured by their acquiescence, he remains liable to the company's creditors in the event of its insolvency. On the other hand, where there has been a mere irregularity in making a *bona fide* forfeiture within the company's powers, as by failing to give him the prescribed notice, or to pass a formal resolution of forfeiture, but only an entry to that effect on the corporate books has been made by the secretary, yet, if both the company and the shareholder treat the forfeiture as valid, it will be held as such against the company's creditors.' (2 Thompson on Corporations, sec. 1792.)"

[2] These authorities have application here. Upon the findings it must be assumed that the levy of the assessment was valid; that the defendants were personally notified both that the assessment was due and payable and that the sale was to take place; that a proper notice of the assessment was duly published; that a proper notice of the sale was published at the Oil Company's principal place of business, as distinguished from the place where its works were situated; and that the stock was sold at public auction, in default of bidders, to the Oil Company itself. There is no suggestion that defendants were guilty of any collusion or bad faith, that they have not acquiesced in the validity of

the sale, or that the failure to publish notice "in some news-paper published in the county where the works of the cor-poration are situated," resulted in any injury to plaintiff. It must be held that, as to this irregularity in the publication of a notice, plaintiff is bound by the acquiescence of the defendants and cannot now insist that (passing for the moment the question of the power of the directors to for-feit the stock after the corporation had become insolvent) the sale did not divest the individual defendants of title to their shares.

2. We shall next consider the claim of the individual de-fendants that by virtue of the sale they were relieved from liability for the unpaid balances upon their stock. In this connection the sole contention of plaintiff is that bidding in at a sale by a corporation of its own stock "at a time when it is insolvent is an invalid transaction, no matter what was the nature of the transaction."

We may observe at the outset there is no evidence, nor is it found that at the time of the delinquent sale any of the defendants or the directors knew of the corporation's insolvency, or that the sale was tainted with fraud or collu-sion.

The plaintiff cites *Vermont Marble Co.* v. *Declez Granite Co.*, 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1067], to the effect "That the assets of a corpora-tion, in case of insolvency, are held in trust for its creditors is not disputed. This is the so-called trust fund theory." It is further argued that "the obligation of the defend-ants herein to pay the balance of their subscriptions was an asset of the corporation. Upon the trust fund theory the judgment is correct, for it follows as a corollary to the above that, after the corporation . . . is insolvent and the creditor himself can compel the stockholder to make good the stockholder's obligation to him as beneficiary, the corpo-ration cannot deprive the creditor of the stockholder's obli-gation by any agreement or transaction between the corpo-ration and the obligor."

Plaintiff further claims that the decisions in *Vermont Marble Co.* v. *Declez Granite Co., supra, People's Bank* v. *Rickard,* 139 Cal. 285, [73 Pac. 858], *Welch* v. *Sargent,* 127 Cal. 72, [59 Pac. 319], *National Carriage Co.* v. *Story etc. Co.,* 111 Cal. 531, [44 Pac. 157], *Herron Co.* v. *Shaw,*

165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488], and *Lucey Co.* v. *McMullen,* 178 Cal. 425, [173 Pac. 1000], are applicable to the facts in the case at bar. But we do not find that in any of those cases a similar state of facts was presented. In the Rickard, Sargent, and Story cases it appeared that the stockholder, with knowledge of the corporation's insolvency, voluntarily transferred his stock to an irresponsible third person with the intent to escape liability; and that the decision in each of those cases turned upon this fact appears, for instance, from this excerpt from the syllabus in the Sargent case: "After the corporation has become insolvent *to the knowledge of the stockholder,* he cannot, by a transfer of his stock to an irresponsible person, escape liability for an unpaid subscription to stock as against a creditor's bill." (Italics ours.) In the case at bar, as we have said, there is no showing that at the date of the sale any of the defendants knew of the corporation's insolvency. In the Vermont Marble Company, the Herron Company, and the Lucey Company cases, the shares which defendants held had been issued to them as fully paid-up stock in return for the transfer from defendants to the corporation of certain property which was actually worth much less than the par value of the stock, and the sole question was whether, there being no contract between the defendants and the corporation to pay the balance, the defendants were nevertheless liable therefor to the creditors. There was no question arising out of any attempted sale, either voluntary or involuntary, of the stockholder's shares. Here, however, as we have noted, the individual defendants have expressly waived any question that might arise as to their original liability, and their sole contention on appeal is that that liability was terminated by the purchase of the stock by the corporation itself at the delinquent sale.

Plaintiff also cites in this connection Thompson and Morawetz, respectively. In volume 4, section 3759, of the former (second edition), it is said: "The rule that a forfeiture bars an action for any balance due on the stockholder's subscription is fraught with too much danger both to the corporation and to the corporate creditors, and opens such a wide and inviting door to fraud, to become the settled policy of corporate law. Under this rule designing directors could by tacit agreement proceed to forfeit unpaid stock in a failing or

already insolvent corporation, and by forfeiture and sale
thereby free the stockholders, including themselves as such,
from further liability on calls, and where the stock itself
might be worthless in the market. In an effort apparently
to escape such a conclusion it has frequently been held,
especially in England, that a forfeiture will not be exercised
for the purpose of enabling the subscribers to escape their
liability. . . . A subscriber . . . cannot, by announcing his
withdrawal from the corporation, relieve himself from lia-
bility to pay additional installments. And on the same
theory it has been held that a stockholder cannot forfeit his
shares by mere abandonment and thus discharge himself
from his subscription. Instead of preventing, these cases
indicate and tend to encourage the dangers suggested. The
only safe, reasonable, and sane rule, consistent with all anal-
ogous principles of law, is the one that holds the right of
forfeiture to be merely cumulative and not exclusive, and
that after forfeiture and sale the subscriber is liable for
the residue on his express promise to pay.''

[3] But it is clearly the rule in California, as between
the stockholder and the corporation, that the effect of a
sale made to meet delinquency in the payment of assess-
ments is wholly to divest the stockholder of all right or
interest in his shares, to pass title to the corporation (Civ.
Code, secs. 343, 344), and, therefore, to terminate all liability
on the part of the stockholder for unpaid balances on his
stock. (See, also, 4 Thompson on Corporations, sec. 3757.)
And the learned author from whom we have just quoted, in
the section succeeding that referred to, admits that ''On the
theory of the class of cases holding that the forfeiture ter-
minates the relation of the stockholder to the corporation
and relieves him from further liability on his subscription,
it follows logically that on a valid forfeiture he ceases to
be a stockholder for all future purposes. . . . It follows,
also, that such a forfeiture releases the former stockholder
from all liability to creditors of the corporation; . . . a
corporate creditor cannot thereafter charge him with the
amount of his subscription remaining unpaid. And a valid
forfeiture, or even an invalid forfeiture which has been
treated by the corporation and the stockholders as valid,
will be held as such against the creditors of the corpora-
tion.''

It is declared in Morawetz that "the power of declaring a forfeiture of shares is conferred upon a corporation solely for the purpose of compelling the subscribers to pay their dues promptly, and thus to increase the amount of the common fund. It was not conferred, and cannot be exercised, for the purpose of discharging stock subscribers from liability to creditors, in case the company should prove a failure. *Unpaid* shares in an insolvent corporation, or a corporation which has lost a portion of its original capital, are clearly of no value, but are a burden to the owner, and to declare them forfeited would be a benefit rather than a loss. To say that a corporation, when insolvent, can declare a forfeiture of the shares of its members would, in effect, mean that the members of a corporation may, under the corporate name and for their own benefit, incur debts upon the faith of their subscriptions, and afterward, if the company should prove a failure, annul their liability, leaving creditors unpaid, by going through the form of declaring a forfeiture." (2 Morawetz on Private Corporations, 2d ed., sec. 857.) The only case cited in the text in support of the views thus expressed is *Tiger Bros.* v. *Rogers etc. Co.*, 96 Ark. 1, [Ann. Cas. 1912B, 488, 30 L. R. A. (N. S.) 694, 130 S. W. 585], where it was held that a purchase by the corporation at a delinquent sale of shares upon which the full amount of the subscription had not been paid was void as to creditors. But in that case neither the statutes under which the corporation was formed nor the corporate by-laws contained any provision authorizing the corporation to purchase its own shares, as do sections 341 and 343 of our Civil Code.

We are not referred to, nor have we been able to find, any case in this state in which it is held that where there is no fraud or collusion, and the directors in good faith have forfeited the shares, the stockholder's liability for the unpaid balance on his stock is not thereby terminated.

Defendants cite on this point 1 Cook on Corporations (seventh edition), sections 127, 128: "In the absence of fraud and collusion it is a settled rule that where a corporation has authority to declare a forfeiture of stock for nonpayment of calls, and a forfeiture is regularly declared, such formal declaration puts an end to the liability of the stockholder, and corporate creditors cannot subsequently hold such an expelled or released stockholder liable. This is the rule, even

though the debt was contracted by the company before the stock was forfeited. The same principle of law that prevents the corporation from suing on a subscription after the stock has been forfeited, prevents the corporate creditors also from doing the same."

In *Mills* v. *Stewart,* 62 Barb. (N. Y.) 444, it is said: "If the directors should intentionally discharge the stockholders, leaving the debts unpaid, it would be a fraud on the creditors and therefore void. *If it was done in good faith,* having due regard to the rights and interests of both creditors and stockholders, I can perceive no reason why it is not both legal and proper. If we are to forbid the exercise of corporate powers because they may be abused, we may, for a like reason, prohibit the exercise of judicial and legislative power. . . . The corporation acting, as I presume, in good faith, has, in conformity with the charter, forfeited the stock of the defendant. He thereby ceased to be liable to the creditors . . . and this action cannot be maintained. If the directors *fraudulently* forfeited the stock, and thereby released the defendant from liability to the plaintiffs, the forfeiture is void." (Italics ours.)

That case was subsequently before the court of appeals (41 N. Y. 384). The opinion in the higher court contains the following: Per Murray, J.: "This forfeiture relieved the respondent from all liability to the company for the unpaid subscription. . . . The debt [upon which the action was brought] was contracted . . . while the respondent was a stockholder. . . ." Per Grover, J.: "The finding and judgment show that the proceedings to forfeit the stock of the respondent were instituted and conducted in good faith, without any design to defraud the creditors of the company. . . . The power to forfeit, like the power to manage all the affairs of the corporation, is vested in the directors, upon the assumption that they will exercise it in the best manner practicable for the promotion of the interest of the company and its creditors. That they will not forfeit stock unless the interest of all concerned will be promoted thereby. Should they forfeit it for the purpose of defrauding the corporation or any creditor, such forfeiture would, for that reason, be set aside. Again it is said, that the creditor trusts the corporation, upon the faith of this liability of the

stockholders to him, and that it would be unjust to deprive him of this remedy by the forfeiture of the stock. The answer to this is that he can only rely upon the liability of the stockholder, *subject to the power of the company to discharge the same,* by receiving payment, or, if they deem it for the interest of all concerned, forfeiting the stock. This the party dealing with the company is presumed to know, and to rely much more upon the capacity and fidelity of the directors, than upon any liability of the stockholders. Again, when the stockholder has paid in full for his stock, he is entitled to it. This he can never obtain after forfeiture, although compelled to pay the entire price thereof to a creditor of the company. The legislature could never have intended a result so unjust to the stockholder. . . . The appellant's counsel insists that the judge erred in excluding proof *of the insolvency of the company at the time of the forfeiture* of the defendant's stock. This evidence, *if the act of the directors was free from fraud, was wholly immaterial. Such proof alone would not show it to have been done fraudulently.* No other proof tending to show fraud was offered in connection with it, nor was any intimation of the purpose for which it was offered given to the court." (Italics ours.)

*Earle* v. *Carson,* 188 U. S. 42, 53, [47 L. Ed. 373, 23 Sup. Ct. Rep. 254, see, also, Rose's U. S. Notes], was a suit by the receiver of an insolvent bank, on behalf of the creditors, to recover the amount of the double liability imposed by statute upon stockholders in national banks. The facts were much stronger than in the case at bar, for the sale which the plaintiff claimed was void was a voluntary sale on the part of the stockholder, while here the delinquent sale was, of course, involuntary. The court held that "the power of a stockholder in a national bank to transfer stock thereof, like other personal property, is not limited by the mere fact that at the time of the transfer the bank, which was a going concern, was insolvent . . . *unless it be shown that the seller was aware of the facts and had sold the stock in order to avoid the impending liability.* Nor is such a *bona fide* sale void if the person to whom the stock is sold is, owing to his insolvency, unable to respond to the double liability, if the fact of such insolvency was unknown to the seller." (Italics ours.)

On a similar state of facts it was said in *McDonald* v. *Dewey*, 202 U. S. 510, 521, 526, [6 Ann. Cas. 419, 50 L. Ed. 1128, 26 Sup. Ct. Rep. 731, see, also, Rose's U. S. Notes] : "The original stockholder cannot be held liable unless the bank was practically insolvent at the time the transfer was made, *and its condition was known, or ought to have been known, to the stockholder making the transfer.* . . . The transferrer can only be held liable if the bank be insolvent, and such insolvency be known, or ought to have been known, to him from his relations to the bank. . . . We think it a proper deduction from the prior cases, and such we hold to be the law, that the gist of the liability is the fraud implied in selling, *with notice of the insolvency of the bank and with intent to evade . . . liability. In short, the question of liability is largely determinable by the presence or absence of an intent to evade liability.* The fact that the sale was made to an insolvent buyer is doubtless additional evidence of the original fraudulent intent, but would not be in itself sufficient to constitute fraud without notice of the insolvency of the bank." (Italics ours.)  (See, also, *Allen* v. *Montgomery,* 11 Ala. 437, 450; *Macauly* v. *Robinson,* 18 La. Ann. 619; 14 C. J. 1007.)

In our opinion, these authorities announce the correct rule as to the effect of a forfeiture of delinquent shares on the liability of the stockholder to creditors for the sums remaining unpaid on his stock. Plaintiff urges that "it is the right of the creditor to have recourse against any stockholder in whose hands the stock appears which is not fully paid-up stock and such a stockholder is under the obligation of seeing that his transferee is financially able to make good the representation upon which the stock was issued." But in the final analysis this contention rests upon the assumption that the rule announced in *Vermont Marble Co.* v. *Declez Granite Co., supra,* was designed to preserve for the creditors not only the liability, but the solvency of the stockholder. Such is not the law. The directors are vested with statutory authority to institute proceedings for the sale of any stock upon which an assessment is delinquent, and on behalf of the corporation to buy in that stock in default of other bidders. So long as the good faith of the directors is not questioned, the power thus to take over shares continues even through insolvency. And

Thompson, *supra,* while arguing that the adoption of the rule here contended for by defendants "is fraught with too much danger," nevertheless concedes, in the succeeding section, that where, as in California, a forfeiture terminates the shareholder's liability as between him and the corporation, it also precludes creditors from recovering on that liability.

Here was a corporation organized, it seems, when it was probably believed that the property which it proposed to acquire contained valuable deposits of oil. Formed under these circumstances, the corporation exchanged all but twenty of its one million shares of capital stock for a lease of such property. Nine hundred and fifty thousand shares were returned by the lessee to be held as treasury stock, and it was from this stock that the shares were purchased by the defendants. As bearing on the *bona fides* is the fact that the defendants paid one assessment on their stock. It was found necessary to levy a second assessment, and the circular letter sent to stockholders on that occasion was introduced in evidence. It was to the effect that the assessment "would clear up all the corporation's obligations and absolutely put us out of debt." There is no suggestion that this statement was not made in good faith. According to the minute-book, which was admitted in evidence, it was not until more than three months after the sale that the secretary, Clyde P. Campbell, notified the board that "the company was unable to meet its obligations, and had been in financial troubles for several months past." As already noted, it is not found, nor is it claimed, that the directors had knowledge of the insolvency. Moreover, no contention is made by the plaintiff that the directors were chargeable with knowledge. [4] And it is the well-settled rule that *stockholders* are not charged with knowledge of the corporation's insolvency. (4 Thompson on Corporations, 2d ed., sec. 4470; 6 Fletcher's Cyclopedia of Corporations, sec. 4043; 14 C. J. 845.) [5] We have a case, then, where the sole question raised by the plaintiff is whether, after the corporation has become insolvent, the board of directors can by forfeiture extinguish, as between a shareholder and creditors, the former's liability for the balance as yet not paid in on his stock. In view of the record, and the authorities we have discussed, it must be held that, since there was no showing

of any fraud, collusion, or intention to prejudice the rights of creditors, and neither the directors of the Rex Midway Oil Company nor the individual defendants knew of the insolvency of the corporation, the taking over by the corporation of the defendants' shares not only divested the defendants of title thereto, but terminated their liability to creditors for the difference between the respective amounts paid in by them and the par value of the stock.

3. In view of this conclusion it will be unnecessary to discuss plaintiff's contention that the measure of the defendants' liability should be the face value of their stock rather than the actual sums which they contracted to pay for the shares.

The judgment is reversed.

Olney, J., Shaw, J., Angellotti, C. J., Lennon, J., Sloane, J., and Wilbur, J., concurred.

· Rehearing denied.

All the Justices concurred.