[Civ. No. 2571.   Third Appellate District.—April 11, 1923.]

# JOHN J. SCHLITZ et al., Respondents, v. BEN THOMAS et al., Appellants.

[1] GUARANTY—PAYMENT OF PROMISSORY NOTE—BAR OF STATUTE OF LIMITATIONS—EFFECT OF.—Where the liability of a corporation to pay its promissory note has been extinguished by the statute of limitations before payment by the guarantors, the payment is voluntary and gives the guarantors no cause of action against the stockholders.

[2] ID.—REIMBURSEMENT OF GUARANTOR—PAYMENT UNDER COMPULSION.—To entitle a guarantor or surety to reimbursement, contribution, or subrogation on account of payments made in behalf of his principal, it must appear that such payments were made under compulsion, that is, under a legal obligation, and not as a mere volunteer.

[3] ID.—PAYMENT OF GUARANTEED NOTE—RECOVERY FROM STOCKHOLDERS OF CORPORATION MAKER—PLEADING—BAR OF NOTE BY STATUTE OF LIMITATIONS.—In an action by the guarantors of a corporation note against the stockholders to recover the amount paid by plaintiffs, it is not necessary for defendants to plead that the note was barred by the statute of limitations at the time of such payment.

[4] ID.—PLEADING—PAYMENT BY GUARANTORS WITHOUT LEGAL NECESSITY—INSUFFICIENT COMPLAINT.—Where a complaint in an action by guarantors of a corporation note against the stockholders to recover the amount paid by plaintiffs not only fails to show that the alleged payment was made under necessity, but affirmatively shows that it was made without any legal necessity, it fails to state a cause of action.

[5] CORPORATIONS—SALE OF STOCK—DELINQUENT ASSESSMENT—ABSENCE OF NAME OF STOCKHOLDER FROM SUBSEQUENT DELINQUENT ASSESSMENT LIST—PRESUMPTION.—It is to be presumed that a corporation followed the law with reference to the collection of assessments against its stockholders, and the absence of the name of a shareholder, who had not paid one assessment from the list of delinquents under a subsequent assessment, justifies the inference that the stock of such shareholder had been sold under the former assessment, or at least the officers of the corporation so believed.

[6] ID.—RECOVERY BY GUARANTORS OF CORPORATION NOTE—STOCKHOLDERS' LIABILITY—EVIDENCE—SALE OF STOCK FOR NONPAY-

6. Liability to creditors of stockholders whose stock is forfeited or sold for nonpayment of assessments, notes, Ann. Cas. 1912B, 494; 19 A. L. R. 1096; 27 L. R. A. 317.

MENT OF ASSESSMENTS.—Where in an action by guarantors of a corporation note against the stockholders to recover the amount paid by plaintiffs it was shown that all the plaintiffs were also stockholders and several were directors, that many of the records had been lost or destroyed and that the business of the corporation had been conducted in a very loose and irregular manner, it was prejudicial error on the cross-examination of the officers to exclude evidence tending to show that defendants' stock had been sold for nonpayment of assessments and that certain of the plaintiffs had made admissions to that effect.

[7] ID.—IRREGULARITIES IN FORFEITURE AND SALE OF STOCK—VALIDITY AS TO CREDITORS.—In view of section 347 of the Civil Code, the fact that there have been mere irregularities in the forfeiture and sale of a stockholder's stock does not render the forfeiture invalid as against creditors of the corporation, where both the corporation and the stockholder treat the forfeiture as valid.

[8] ID.—CORPORATION BOOKS—PRESENCE OF NAME AS STOCKHOLDER—PRESUMPTION.—Under section 3 of article XII of the constitution and sections 322 and 343 of the Civil Code, a person whose name appears as a stockholder on the books of a corporation is presumed to occupy the relation to the corporation which the books indicate, the entry, however, not being conclusive but merely presumptive, and while such person, though not the owner, may be required to respond to a creditor of the corporation, such liability is based, not upon ownership, but upon estoppel to deny ownership.

[9] ID.—RECOVERY OF GUARANTORS AGAINST STOCKHOLDERS—ESTOPPEL—NAMES ON BOOKS—ESSENTIALS.—To entitle guarantors of a corporation note paid by them to recover on the ground of estoppel against stockholders whose names appeared as such on the books but whose shares had been sold to the corporation for nonpayment of assessments, it must appear that the plaintiffs knew of the admission of the relation as stockholders indicated by the books at the time they paid the note, that they did not know of the sales of the shares, and that they relied directly on such admission, and will be injured by allowing its truth to be disproved.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Reversed.

The facts are stated in the opinion of the court.

8. Liability of one whose name appears upon corporate books as stockholder without his consent, note, 3 **A. L. R.** 1049.

J. W. Wiley for Appellants.

C. L. Claflin and Claflin & Lambert for Respondents.

FINCH, P. J.—The complaint alleges that at all times therein mentioned the defendants were stockholders of the Delano Creamery Company, a corporation; that on November 28, 1914, the corporation executed its promissory note to the First National Bank of Bakersfield for $8,000, due one day after date; that at the same time the plaintiffs duly indorsed such note and guaranteed the payment thereof and any renewal of the same; that on the twenty-first day of July, 1916, the bank commenced an action against plaintiffs and others to enforce payment of the note and, on the thirteenth day of February, 1918, it was given judgment against plaintiffs and the corporation for $10,107.10; and that on the twenty-first day of April, 1918, the plaintiffs paid the bank $10,541.27 in full satisfaction of the judgment.

For a second cause of action it is alleged that on the first day of December, 1912, the corporation executed its promissory note to the First National Bank of Delano for $4,000 due one day after date; that at the same time the plaintiffs duly indorsed the note and guaranteed the payment thereof and any renewal of the same; and that on the first day of July, 1918, the plaintiffs, as such indorsers and guarantors, paid the last-named bank $6,189.64. The complaint alleges that this action was commenced June 23, 1919, and contains appropriate allegations as to the number of shares of subscribed capital stock and the number owned by each defendant.

The answer of defendants Thomas, McHarvey, and Clark denies the execution of the notes by the corporation and the alleged payments by plaintiffs and further denies that defendants were stockholders at any time after February—1916.

The evidence shows that the notes were executed and their payment guaranteed as alleged in the complaint; that the plaintiffs paid $10,445.10 in satisfaction of the alleged judgment in April, 1918; and that in July, 1918, the plaintiffs paid $6,189.60 in satisfaction of a judgment rendered in an action by the First National Bank of Delano against R. J.

Martin and others. The complaint does not allege the rendition or the payment of any such judgment and the evidence does not show on what liability the judgment was based or whether the plaintiffs herein were parties to the action in which the judgment was rendered. Notwithstanding this variance between the allegations of the complaint and the evidence and the further fact that the uncontradicted evidence shows that the amount paid by plaintiffs in satisfaction of the judgment alleged in the first cause of action was 96 dollars less than alleged, the court found for plaintiffs in accordance with the allegations of the complaint and entered judgment accordingly. Thomas, McHarvey, E. C. Clark, and Mrs. Anna M. Smith, executrix, appeal from the judgment against them.

[1] Appellants contend that the liability of the corporation to pay the $4,000 note had been extinguished by the statute of limitations before the alleged payment thereof by plaintiffs and that therefore the payment was voluntary and gave plaintiffs no cause of action against the defendants. This contention must be sustained. [2] To entitle a guarantor or surety to reimbursement, contribution, or subrogation on account of payments made in behalf of his principal it must appear that such payments were made under compulsion, that is, under a legal obligation, and not as a mere volunteer. (*Stone* v. *Hammell,* 83 Cal. 547 [17 Am. St. Rep. 272, 8 L. R. A. 425, 23 Pac. 703]; *Machado* v. *Fernandez,* 74 Cal. 362 [16 Pac. 19]; *United States Fidelity etc. Co.* v. *More,* 155 Cal. 415 [101 Pac. 302]; *Easton* v. *Boston Investment Co.,* 51 Cal. App. 246 [196 Pac. 796].) "One of the principles lying at the foundation of subrogation in equity, in addition to the one already stated, that the person seeking this subrogation must have paid the debt, is that he must have done this under some necessity, to save himself from loss which might arise or accrue to him by the enforcement of the debt in the hands of the original creditor." (*Aetna Life Ins. Co.* v. *Middleport,* 124 U. S. 534 [31 L. Ed. 537, 8 Sup. Ct. Rep. 625, see, also, Rose's U. S. Notes].) The burden was on the plaintiffs to show that they were legally liable to make the alleged payment. (*Easton* v. *Boston Investment Co., supra.*)

[3] The defendants did not plead that the note was barred at the time of such payment. Plaintiffs' cause of

action, if they have any, was not barred. It accrued at
the time of the payment. (*Ryland* v. *Commercial etc.
Bank*, 127 Cal. 525 [59 Pac. 989]; *Yule* v. *Bishop*, 133 Cal.
574 [62 Pac. 68, 65 Pac. 1094].) The objection here raised
is not that plaintiffs' cause of action was barred but that
no cause of action ever existed. The issue in this case is
not whether the note was barred at the time of payment but
whether the payment was voluntary. The fact that the
note was barred when paid by plaintiffs is merely evidence
that the payment was voluntary. No reason appears why
such evidence should have been pleaded by defendants any
more than that other evidence should have been so pleaded.
[4] Plaintiffs' second cause of action not only fails to
show that the alleged payment was made under necessity,
but affirmatively shows that it was made without any legal
necessity. It therefore failed to state a cause of action.
In *Bailey* v. *Bussings,* 29 Conn. 1, it is said that the form
of action for contribution "is usually that of the count in
general *indebitatus assumpsit* for money .paid, laid out and
expended, which is, for several reasons, the most advisable
form of declaring in such cases; but where a special count
is adopted it in no case states merely the existence of a
legal liability on the part of the defendant to contribute to
the amount paid by the plaintiff, but invariably alleges
the facts on which such liability arose." In *Smith* v. *Faris-
Kesl Const. Co.,* 27 Idaho, 407, 430 [150 Pac. 25, 32], the
court said: "That facts must be alleged upon which the claim
to the right of subrogation is based is a rule so elementary
and universal that no authorities need be cited to support
it." (See, also, *Aetna Ins. Co.* v. *Hann,* 196 Ala. 234 [72
South. 48]; *Bond* v. *Montgomery,* 56 Ark. 563 [35 Am. St.
Rep. 119, 20 S. W. 525]; *Michigan City* v. *Marwick,* 67
Ind. App. 294 [116 N. E, 434, 119 N. E. 154]; *Johnson* v.
*Goldsby,* 32 Mo. App. 560; *First Nat. Bank* v. *Thompson,*
61 N. J. Eq. 188 [48 Atl. 333]; *Sherk* v. *First Nat. Bank*
(Tex. Civ. App.), 152 S. W. 832.)

[5] Appellants contend that the evidence does not sup-
port the finding that they were stockholders at the time of
either alleged payment. During the year 1915 the corpora-
tion levied three assessments upon the capital stock thereof.
Plaintiff John J. Schlitz testified that he had been secretary
of the corporation for five or six years; that the minutes

of the board of directors' meetings were written on loose sheets and laid away "and a great many of those records were destroyed at the time my office burned in 1918"; that "none of the directors paid any attention to the creamery business except Frank, Mr. Hawley and myself. I guess we run the whole thing for awhile." Notices of the three assessments and notices of shareholders who were delinquent in the payment of such assessments, as published in a local newspaper, were admitted in evidence. Each notice of assessment recited that such assessment had been levied at a special meeting of the board of directors, the dates of such meetings being stated as May 10th, August 21st, and December 20th, respectively, in the year 1915. The first delinquency notice, after enumerating the delinquent shareholders, the number of shares owned by them respectively and the amounts of their unpaid assessments, stated that "in accordance with law, and an order of the board of directors made on the seventeenth day of June, 1915, so many shares of each parcel of such stock as may be necessary will be sold at public auction at the office of John J. Schlitz, on I street, in the town of Delano, California, on the nineteenth day of July, 1915, at the hour of 2 P. M. of said day, to pay said delinquent assessment thereon, together with costs of advertising and expenses of sale." The notice was signed by John J. Schlitz as secretary. The other delinquent notices were in the same form and contained similar recitals. The second notice fixed the time of sale at October 18, 1915, and the third at February 29, 1916. The names of Clark and McHarvey appear as delinquents in the first notice but not in the others. They paid no assessment. Archie Smith's name appears in the second notice but not in the last. He paid the first assessment only. Thomas paid the first two assessments but not the last. He is listed as delinquent in the last notice. Section 333 of the Civil Code provides, in so far as applicable to the facts of this case, that "no assessment must be levied while any portion of a previous one remains unpaid, unless: 1. The power of the corporation has been exercised in accordance with the provisions of this article for the purpose of collecting such previous assessment." It is to be presumed that the corporation followed the law, and the absence of the name of a shareholder, who had not paid one assessment, from the list

of delinquents under a subsequent assessment, justifies the inference that the stock of such shareholder had been sold under the former assessment, or at least that the officers of the corporation so believed. [6] Schlitz testified that no one appeared at any of the delinquent sales to purchase the stock of delinquent shareholders; that he and the president of the corporation were present at the times and places fixed for the sales; and that the same procedure was had in each instance. Relative to the first sale, he testified: "When the time came for the sale, I think the president, my son, was there at my office. Nothing was said about the stock being delinquent. No one was there to bid. Q. Now, isn't it a fact when no one was there to bid, you said between yourselves, . . . 'There is nobody here, strike it off to the corporation,' or you let your son bid it in for the corporation at the assessment price? A. Nothing was said about that." The attention of the witness was directed to the following question and answer in a prior examination: "Q. You sold their stock, didn't you, and the corporation bid it in for the assessment? A. I don't know if we did or not, we did in a way; it was presumed to be sold, yes." His examination at the trial then proceeded: "Q. Did you make that statement or give that testimony? A. I did. This is still correct. . . . I presume there was no stock sold, there was no stock sold as far as I know, not a share to anybody. . . . Q. You as secretary and your son Frank as president took it for granted that the proceedings there amounted to a sale, is that right? A. That is the idea. . . . Q. Do you remember that during the summer of 1918, you had your office in the same room, in the Masonic Temple with Fred Waite? A. Yes, sir. Q. Do you remember a conversation during that time, in the presence of yourself and Mr. Fred Waite, discussing these creamery matters generally and the various assessments, and you told him that nobody ever came to these sales, that Frank was there as president and just bought the delinquent stock in for the company? Mr. Claflin: Object to that as incompetent, irrelevant, and immaterial, and not proper cross-examination." The court sustained the objection. The stock-book of the corporation had been admitted in evidence on the direct examination of the witness and he had testified concerning it: "So far as I know, this book is the complete

61 Cal. App.—41

record of the stock ownership of this corporation.'' The names of defendants appeared therein as stockholders. The question to which objection was sustained was certainly proper cross-examination and very material to defendants' case. All the plaintiffs were stockholders and several were directors. The business of the corporation had been conducted in a very loose and irregular manner. Schlitz testified that he handled ''all the official conduct of the corporation.'' He was uncertain whether a quorum of the directors was present when the assessments were levied. Much of his testimony is wholly at variance with the facts stated in the notices which he signed and caused to be published and much more favorable to his present contentions as a plaintiff. Many of his records had been burned prior to the trial. Under all these circumstances, the defendants were entitled to the fullest latitude in cross-examining the witness. **[7]** The court also refused to permit defendants to prove that after the sales of their respective shares of stock to the corporation they did not make any claim or assert any right or interest therein. This evidence was admissible as tending to show, together with the other facts stated, that both the corporation and the defendants had acquiesced in the sales of the latter's stock and had treated such sales as valid. Section 347 of the Civil Code provides:

''ACTION FOR RECOVERY OF STOCK, AND LIMITATION THEREOF. No action must be sustained to recover stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or defect or irregularity in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, together with all subsequent assessments which may have been paid thereon and interest on such sums from the time they were paid; and no such action must be sustained unless the same is commenced by the filing of a complaint and the issuing of a summons thereon within six months after such sale was made.''

More than two years had elapsed from the last sale of delinquent stock to the first alleged payment by plaintiffs. Under the provisions of section 347 the defendants had waived any rights they may have had to recover the stock. In *American Well etc. Co.* v. *Blakemore,* 184 Cal. 343, 348

[19 A. L. R., 1087, 193 Pac. 779, 781], in discussing a similar question, the court said: "The following quotation from *Crissey* v. *Cook*, 67 Kan. 20 [72 Pac. 541], is also pertinent: 'If the forfeiture is invalid in respect of something which the parties cannot waive, and which cannot be cured by their acquiescence, he remains liable to the company's creditors in the event of its insolvency. On the other hand, where there had been a mere irregularity in making a *bona fide* forfeiture within the company's powers, as by failing to give him the prescribed notice, or to pass a formal resolution of forfeiture, but only an entry to that effect on the corporate books has been made by the secretary, yet, if both the company and the shareholder treat the forfeiture as valid, it will be held as such against the company's creditors.'" The secretary, Schlitz, testified that he did not notify the directors of any of the special meetings held by them, though it does not appear whether they were otherwise notified. It also appears that he assumed authority to publish the delinquent notices without having been formally authorized to do so by the directors. A corporation, however, is presumed to have knowledge of the acts of its president and secretary in the conduct of its business. The corporation and the defendants treated the assessments and sales as valid and any irregularities therein must be deemed to have been waived. Whether or not the evidence was such as to require a finding that defendants were not stockholders at the time of the alleged payments by plaintiffs, the exclusion of the offered testimony was prejudicial error.

[8] Respondents contend that, if it be conceded that the corporation purchased defendants' stock at the delinquent sales, the defendants are still liable by reason of the fact that no entry of the transfer was made on the books of the corporation as required by section 343 of the Civil Code. Section 3, article XII, of the constitution, provides: "Each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock, or shares of the corporation or association." Section 322 of the Civil Code, as amended by Stats. 1917, page 786, contains similar provisions and provides: "The

terms 'stockholder' and 'member,' as used in this section, applies not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock or of a membership, although the same appears on the books in the name of another.'' Where the name of a person appears as a stockholder on the books of the corporation, "the presumption is that he occupies the relation to the corporation which the books indicate. The entry is, however, not conclusive, but presumptive merely.'' (*Welch* v. *Gillelen,* 147 Cal. 571, 575 [82 Pac. 248, 249]; *National Bank, etc.,* v. *Western Pac. Ry. Co.,* 157 Cal. 573 [21 Ann. Cas. 1391, 27 L. R. A. (N. S.) 987, 108 Pac. 676]; *Shean* v. *Cook,* 180 Cal. 92 [5 A. L. R. 1042, 179 Pac. 185]; *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565 [194 Pac. 1024].) While such person, "though not the owner, may be required to respond to a creditor of the corporation, such liability is based, not upon ownership, but upon grounds of estoppel to deny ownership.'' (*Hughes Mfg. etc. Co.* v. *Wilcox,* 13 Cal. App. 22, 28 [108 Pac. 871, 873].) The presence of a person's name on the books of a corporation as a stockholder is in the nature of a declaration or admission that he is such. [9] To entitle plaintiffs to recover on the grounds of estoppel, it must appear that they knew of such admission at the time of payment, otherwise they could not have been misled by it (*Shean* v. *Cook, supra*); that they were without knowledge of the sales to the corporation (*Biddle Boggs* v. *Merced M. Co.,* 14 Cal. 279); and that they "relied directly upon such admission, and will be injured by allowing its truth to be disproved.'' (*Biddle Boggs* v. *Merced Min. Co., supra; Bowman* v. *Cudworth,* 31 Cal. 148; *Lux* v. *Haggin,* 69 Cal. 255, 266 [4 Pac. 919, 10 Pac. 674]; *Conway* v. *Supreme Council,* 137 Cal. 384 [70 Pac. 223]; *Williams* v. *Williams,* 170 Cal. 625 [151 Pac. 10]; *Frank* v. *Crescent Wharf & Warehouse Co.,* 50 Cal. App. 272, [195 Pac. 79].) It affirmatively appears that some of the plaintiffs had actual knowledge of the sales and, therefore, could not have been misled by the stock records. None of the plaintiffs suffered any injury from the failure to enter the transfers on the books. They extended no credit in reliance on the book entries. Any payments made by them, which created a liability against the stockholders, were not made in reliance upon the presumption that the defendants

were stockholders, but in the discharge of the obligation they assumed when they became guarantors. Knowledge on their part of the true ownership of the stock would not have enabled them to escape any part of that obligation, and therefore a necessary element of estoppel is wanting.

The judgment appealed from is reversed, with directions to the trial court to permit the plaintiffs to amend their complaint if so advised.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 2, 1923.